COMMONWEALTH *vs.* EARL G. HERSEY.

Norfolk. March 7, 8, 1949. — April 7, 1949.

Present: QUA, C.J., LUMMUS, RONAN, WILKINS, & WILLIAMS, JJ.

*Abortion. Practice, Criminal,* Election; Exceptions: waiver, whether exception saved, whether error harmful; Requests, rulings and instructions; Charge to jury; New trial. *Election. Evidence,* Relevancy and materiality, Competency, Of criminal proceeding. *Witness,* Cross-examination, Impeachment. *Error,* Whether error harmful. *Waiver. Words,* "Conviction."

A finding that a physician was guilty of unlawfully administering to and advising and prescribing for a woman and causing drugs and medicines to be taken by her with intent on his part to procure her miscarriage in violation of G. L. (Ter. Ed.) c. 272, § 19, was warranted by evidence of her consulting him in the early stages of pregnancy and telling him that she had heard that he had performed an operation on another woman and thought he could possibly help her, and of his treatment of and prescription for her over a period of several months thereafter, culminating in a miscarriage.

Under an indictment against a physician based on G. L. (Ter. Ed.) c. 272, § 19, and charging that the defendant unlawfully administered to a woman and advised and prescribed for her and caused to be taken by her a poison, drug, medicine, and other noxious thing with intent on his part to procure a miscarriage, the Commonwealth could not properly have been required to elect which of such alleged acts it would rely upon.

At the trial of an indictment against a physician under G. L. (Ter. Ed.) c. 272, § 19, for treating a woman with intent to procure a miscarriage, evidence of what he did in treating her was material.

Admission of evidence of the presence of certain machines in a physician's office and of their use by him upon a woman was not prejudicial error at the trial of an indictment against him under G. L. (Ter. Ed.) c. 272, § 19, for unlawfully administering to her and advising and prescribing for her and causing to be taken by her a poison, drug, medicine and other noxious thing with intent on his part to procure a miscarriage, where the Commonwealth expressly disclaimed seeking a conviction upon any ground other than the use of drugs and the judge charged the jury that that was the only ground of guilt which they might consider.

The exclusion of certain questions asked in cross-examination of a woman at the trial of an indictment against a physician for treating her with intent to procure a miscarriage in violation of G. L. (Ter. Ed.) c. 272, § 19, was within the discretion of the trial judge.

No question was presented to this court where, following an exception by the defendant to the admission of testimony at the trial of an indictment, the district attorney stated that he would "waive it" and the defendant requested no further action by the judge: the judge was justified in assuming that the defendant was satisfied by the statement of the district attorney and desired nothing further of the judge.

At the trial of an indictment against a physician for treating a woman with intent to procure a miscarriage contrary to G. L. (Ter. Ed.) c. 272, § 19, where the woman had testified that in accordance with instructions of the defendant she had gone to a drug store to get ergotrate and had given the druggist the defendant's telephone number, no error appeared in the admission of testimony by a druggist that he telephoned the defendant and filled a prescription for ergotrate which he sold to the woman.

At the trial of an indictment against a physician for treating a woman with intent to procure a miscarriage contrary to G. L. (Ter. Ed.) c. 272, § 19, testimony elicited from the defendant in cross-examination as to his knowledge of the use of certain substances to cause a miscarriage was admissible although he testified he did not use them in treating the woman.

It was not error to impeach the credibility of the defendant at the trial of an indictment against a physician for violation of G. L. (Ter. Ed.) c. 272, § 19, the penalty for which is a fine and imprisonment, by reading to the jury a portion of a certified copy of a record showing that the defendant previously had been found guilty of the same offence, had been sentenced to pay a fine, and had paid the fine, although that record showed the further facts, not disclosed to the jury, that he had also been sentenced to imprisonment, that the execution of the sentence of imprisonment had been suspended and he had been placed on probation, and that at the end of the probationary period the indictment had been filed.

It is discretionary with the judge at a criminal trial to determine what, if any, parts of the evidence he will discuss in his charge to the jury in addition to giving ample and correct instructions on the law applicable to all branches of the case.

A physician may be found guilty of the offence of unlawfully administering to a woman and advising and prescribing for her and causing to be taken by her a poison, drug, medicine and other noxious thing with intent on his part to procure a miscarriage, contrary to G. L. (Ter. Ed.) c. 272, § 19, although there be no proof that a miscarriage actually resulted from his acts.

No abuse of discretion nor error of law was shown in the denial of a motion for a new trial of an indictment against a physician for treating a woman with intent to cause a miscarriage contrary to G. L. (Ter. Ed.) c. 272, § 19.

INDICTMENT, found and returned on April 9, 1948.

The case was tried before *Collins,* J.

In connection with the eighth assignment of error, the record disclosed that in direct examination of Dr. Cavanaugh, a witness for the Commonwealth, he testified that he examined the woman involved in the case and "took a brief history," which was "similar to the history she gave" in her testimony; that he was then asked to state "the history"; and that the defendant's counsel objected, and, upon the judge's ruling after some discussion that the assistant district attorney might "have it," took an exception. The record then was as follows: "Q. Will you tell us what history she gave you? A. She said that she had had her last normal menstrual period on the fourth of November. She missed her period in December, and shortly after that she said that she consulted a physician to find out whether she was pregnant or not, and if so, to see if he could help her get rid of the pregnancy. COUNSEL FOR THE DEFENDANT. I don't think that's admissible. The JUDGE. Step up to the bench. (Conference at the bench.) COUNSEL FOR THE DEFENDANT. Exception, please. THE ASSISTANT DISTRICT ATTORNEY. I will waive it, your Honor. COUNSEL FOR THE DEFENDANT. May that be stricken out as to what she said? THE ASSISTANT DISTRICT ATTORNEY. I will waive it."

*E. M. Dangel,* (*L. E. Sherry & C. A. George* with him,) for the defendant.

*B. W. Flynn,* Assistant District Attorney, (*E. R. Dewing,* District Attorney, *& R. G. Clark, Jr.,* Assistant District Attorney, with him,) for the Commonwealth.

RONAN, J. The defendant, a physician, was found guilty after a trial upon an indictment which was based upon a violation of G. L. (Ter. Ed.) c. 272, § 19, and which charged him with unlawfully administering to a woman and advising and prescribing for her and causing to be taken by her a poison, drug, medicine, and other noxious thing with the intent on his part to procure a miscarriage. The case was tried in accordance with G. L. (Ter. Ed.) c. 278, §§ 33A–33G, as amended by St. 1939, c. 341, and comes here upon the defendant's appeal with an assignment of errors,

a summary of the record and a transcript of the evidence.

The evidence would warrant the jury in finding the following facts. A young unmarried woman, suspecting in December, 1947, that she was in the early stages of pregnancy, consulted the defendant, telling him that she had heard that he had performed an operation on another woman and thought that he could possibly help her. She gave him the name of the person who sent her to him. He requested her to call the following week, which she did. He examined her and told her she was pregnant. She visited the defendant's office nearly every week until April 2, 1948. She was given injections into her buttocks on three of the early visits. She asked him if he was giving her pituitrin, and he replied that it was something stronger. Pituitrin is a drug frequently used to induce a miscarriage although it could not produce this result unless it was administered more frequently than once a week. Beginning about the middle of January he began to insert some medication into her body. During these treatments she could not see just what he was doing by reason of her position on the examining table. He gave her a capsule to quiet her. She heard a noise similar to rinsing a syringe. After this treatment she paid him $70. He told her to notify him if anything happened. Similar treatments were repeated. After nearly every visit she made subsequent to February 5, 1948, she flowed somewhat, and "sometimes it was a greater amount than others." On one occasion he covered a tampon with a medication which had a dark color and a foul odor, and by the use of forceps inserted it into her body. The next day she began to flow for a period of forty-eight hours. She began to flow again on March 11, 1948, and she telephoned to him. He advised her to get some ergotrate at a drug store and that the druggist could telephone to him and she would obtain this drug. She did so and took the ergotrate. This is a drug that is used to procure a miscarriage. She telephoned the defendant on March 31, 1948, telling him that she had started to pass blood clots and he replied,

"This is probably it." She telephoned him on April 1, 1948, that she had had a miscarriage but had not passed the afterbirth. He prescribed for her and she followed his advice. The next day she telephoned to him that she had not got rid of the afterbirth and that she was feeling weak, and she asked him, if she got worse, whether he would see her at her home. He replied that he did not make house calls "in cases like that." She endeavored to secure another physician; but he refused to treat her when she told him she had been aborted. Her brother then drove her to the defendant's office. The defendant gave her injections into the buttocks, put her on the examining table, pressed on her stomach, and told her that he had gotten out all the afterbirth. After she left her brother made a remark about the cost and the defendant replied, "this is a hell of a mess," and that he would later discuss the matter of expenses. The woman was later seen by another physician who ordered her immediate removal to the hospital where she was treated and confined for two weeks. On April 4, 1948, the defendant was taken to the hospital and in the presence of the woman he was asked by a police officer if he had ever seen this girl before and he said that he had not.

The defendant testified that he gave her injections in the buttocks of a certain compound to build up her strength as she was anemic, and that he applied medication consisting of a certain substance which he inserted into her body for the purpose of treating an inflammatory condition of the cervix of the uterus. He also testified that his treatment was proper prenatal care, and that he did not intend to procure a miscarriage and nothing that he did produced it.

Upon the evidence the jury could find that the woman went to the defendant for the purpose of having him procure a miscarriage; that he undertook to do so; and that with intent to accomplish this purpose he treated her with drugs. The case was properly submitted to the jury. *Commonwealth* v. *Leger,* 264 Mass. 217. *Commonwealth* v. *Hamel,* 264 Mass. 564. *Commonwealth* v. *Donoghue,* 266 Mass. 391. *Commonwealth* v. *Hoyt,* 279 Mass. 400. *Commonwealth* v.

*Polian*, 288 Mass. 494. Assignment 20 is based upon the denial of a motion to direct a verdict of not guilty. There was no error in the refusal to grant the motion.

Assignments 1, 11, and 18 are based upon the refusal of motions to require the Commonwealth to elect whether it would rely upon the administering or advising or prescribing of the defendant or the causing by him of the taking by his patient of a drug, medicine or noxious thing with the intent to procure her miscarriage. The indictment, following the statute, G. L. (Ter. Ed.) c. 272, § 19, properly charged all the various ways in which the offence could be committed with reference to the employment of various drugs, medicines and other noxious thing. A defendant may be convicted if shown to have committed the offence in any one of these ways. *Commonwealth* v. *Martin*, 304 Mass. 320, 322. *Commonwealth* v. *Dowe*, 315 Mass. 217, 219–220. The penalty was the same if the jury accepted as true the evidence showing that he violated the statute in any or all of the various ways designated therein with reference to the substances mentioned. The defendant's treatment was to be considered as a whole. It continued until shortly after the miscarriage. The defendant was not entitled to restrict the proof or the grounds upon which a conviction would be sought to a single part of the treatment all of which could be found to be directed towards the same purpose. There was no error in refusing to require the Commonwealth to elect. *Commonwealth* v. *Sullivan*, 146 Mass. 142, 145. *Commonwealth* v. *Schaffner*, 146 Mass. 512. *Commonwealth* v. *Farrell*, 322 Mass. 606, 614.

Assignment 2 is based upon the refusal to strike out the testimony of the woman that the defendant placed some medication upon a tampon which he inserted into her body. Assignments 12 and 13 are based upon an exception to the admission of testimony in the cross-examination of the defendant that he had a cinetrome or galvanic machine and also an ultra-violet light or a diathermy machine in his office. He denied that he used either in treating her. Assignment 17 is based upon an exception to the admission of testimony

by the woman, solely for the purpose of contradicting the defendant, that he had employed both machines upon her. Assignment 19 is based on the denial of the defendant's motion to strike out all evidence concerning instruments and machines. The Commonwealth was entitled to show all that the defendant did in treating his patient. The admission of her testimony for the purpose of contradicting the defendant rested largely in the discretion of the trial judge. *Jennings* v. *Rooney*, 183 Mass. 577. *Commonwealth* v. *Cantor*, 253 Mass. 509. But the testimony, being admitted only for this limited purpose, could not be considered as substantive evidence to establish the fact that both machines had been employed in her treatment. *Rankin* v. *Brockton Public Market, Inc.* 257 Mass. 6. The ruling limiting the effect of this testimony was too favorable to the defendant. What he did in treating his patient was competent to show his purpose and intent, *Commonwealth* v. *Corkin*, 136 Mass. 429, *Weston* v. *Barnicoat*, 175 Mass. 454, 456; and he could not possibly have been harmed by the introduction of such testimony, as the Commonwealth expressly disclaimed that it was seeking a conviction on any ground other than the use of drugs and the judge charged the jury that they could consider only this ground and no other in determining the defendant's guilt.

Assignments 3, 4, 5, 6, and 7 are all based upon exceptions to the exclusion of evidence on the cross-examination of the woman. The judge excluded evidence that the woman had a child in 1947. It subsequently appeared that she had given birth to a child in 1947. He refused to permit the defendant to inquire of the woman about what knowledge she gained from her first pregnancy as to how to abort herself. Her knowledge as to procuring a miscarriage was fully inquired into by the defendant, and the source of whatever knowledge she might have was immaterial. The judge excluded a question calling for the name of a person with whom she had intercourse during her pregnancy. The woman testified that she had taken four quinine pills in an effort to rid herself of the pregnancy before she con-

sulted the defendant. The judge excluded a question call-
ing for an answer as to whether she had disclosed this to the
district attorney. In answer to a second question thereafter,
she testified that she had not told the district attorney that
she had taken quinine, and made the same answer further
on in her testimony. The judge also excluded an inquiry
whether she had told the defendant that she had previously
had a child. The defendant was not harmed by any of these
rulings and most, if not all, were matters which the judge
in his discretion could properly exclude in the cross-examina-
tion of the witness. *Commonwealth* v. *Patalano,* 254 Mass.
69. *Commonwealth* v. *Leger,* 264 Mass. 217.

Assignment 8 is based upon an exception taken to the
testimony of Dr. Cavanaugh and to the failure of the judge
to strike out a part of his answer. The witness, in narrating
the history which he obtained from the woman after her
admission to the hospital, stated various facts she told him.
He was interrupted by an objection made by the defendant's
counsel just after he mentioned that she told him she had
consulted a physician to see whether he could help her get
rid of the pregnancy. A conference followed at the bench.
The defendant took an exception, and the district attorney
stated that he would waive the question. A part of the
answer of the witness was competent, *Barber* v. *Merriam,*
11 Allen, 322; *Cronin* v. *Fitchburg & Leominster Street
Railway,* 181 Mass. 202; *Commonwealth* v. *Dawn,* 302 Mass.
255, 260, and an exception to the answer could not be
sustained. *Commonwealth* v. *Anderson,* 220 Mass. 142,
145. *Krinsky* v. *Whitney,* 315 Mass. 661, 673. The de-
fendant's counsel asked that what she said be struck out,
and thereupon the district attorney stated, "I will waive
it." The incident ended there. The defendant took no
exception to the failure to strike out the evidence. The
judge could rightly assume that the defendant was satis-
fied in accepting the statement of the district attorney
that he had withdrawn or waived the entire answer and that
there was nothing further for him to do. In these circum-
stances, if the defendant desired further action by the judge,

he should have requested it. *McCart* v. *Squire*, 150 Mass. 484. *Muller* v. *Powers*, 174 Mass. 555. *Barstow* v. *Parsons Pulp & Paper Co.* 208 Mass. 232, 235–236. *Cozzo* v. *Atlantic Refining Co.* 299 Mass. 260, 269. *Duff* v. *Webster*, 315 Mass. 102, 105.

The ninth assignment refers to the evidence of Dr. Cavanaugh to the effect that, assuming he believed the history given him by the woman and from his examination of her, he was of the opinion that her miscarriage was caused by some external forces. This assignment is not based upon any exception and is not properly before us. *Commonwealth* v. *McDonald*, 264 Mass. 324; 336. *Commonwealth* v. *Zelenski*, 287 Mass. 125, 128.

Assignment 10 is based upon an exception to the admission in evidence of the testimony of a druggist that he telephoned the defendant and filled a prescription for ergotrate which he sold to the woman. There was no error in the admission of this evidence. The woman had previously testified without objection that in accordance with the defendant's instructions she went to a drug store to get the ergotrate and told the druggist the defendant's telephone number; and that the druggist talked with the defendant and in consequence she got the pills. It was for the jury to say whether the person who talked with the druggist was the defendant. *Massachusetts Northeastern Street Railway* v. *Plum Island Beach Co.* 255 Mass. 104, 114. *Rich* v. *Weeks*, 279 Mass. 452, 453–456. *Irving Tanning Co.* v. *Shir*, 295 Mass. 380, 383–384.

Assignments 14 and 16 are based upon the admission of testimony in the cross-examination of the defendant as to his knowledge of the use of intraurine paste and gynecological soap to procure a miscarriage. He testified that he was acquainted with the use of such paste and had heard that the soap could be used to procure a miscarriage. Although he testified that he did not use any of these substances in treating his patient, the Commonwealth was not bound by this testimony or by his testimony that the medication he inserted into her body was harmless, but was entitled to show

his knowledge of the paste and soap and their uses. This evidence alone would certainly not prove the offence, but the jury could consider it together with all the other evidence in determining the guilt of the defendant. *Commonwealth* v. *Blair*, 126 Mass. 40. *Commonwealth* v. *Polian*, 288 Mass. 494, 501. *Commonwealth* v. *Bartolini*, 299 Mass. 503, 512.

Assignment 15 is based upon an exception to the reading by the district attorney of a portion of a certified copy of a record showing that the defendant had been found guilty in 1942 upon an indictment accusing him of administering drugs for the purpose of procuring a miscarriage and that he was sentenced to pay a fine of $500, which he paid. This record also showed that he was, in addition to the fine, sentenced to a term of imprisonment for not less than two and one half and not more than three years in the State prison, that the execution of this sentence was suspended for two years and he was placed on probation, and that at the end of this probationary period the indictment was filed. It is to be noted that the jury knew nothing about the sentence except that the defendant had been fined and that he paid the fine.

The evidence was offered and admitted under G. L. (Ter. Ed.) c. 233, § 21, Third, to impeach the testimony of the defendant. It is settled that under this section, permitting the introduction of a record of conviction of a crime, the term "conviction" means a final judgment and sentence of the court conclusively establishing his guilt. Merely showing a verdict of guilty or placing a defendant on probation does not satisfy the statute. *Commonwealth* v. *Gorham*, 99 Mass. 420, 422. *Fay* v. *Harlan*, 128 Mass. 244, 245. *Commonwealth* v. *Kiley*, 150 Mass. 325, 326. *Attorney General* v. *Pelletier*, 240 Mass. 264, 310–311. *Commonwealth* v. *Sacco*, 255 Mass. 369, 427. *Karasek* v. *Bockus*, 293 Mass. 371, 372.

The penalty for violation of G. L. (Ter. Ed.) c. 272, § 19, is a fine and imprisonment, and a judge may impose a sentence in accordance with G. L. (Ter. Ed.) c. 279, § 1A, as amended by St. 1934, c. 205, § 2, which provides that "When a person convicted before a court is sentenced to

fine and imprisonment, the court may direct that the execution of the sentence be suspended as to the fine or the imprisonment or both, and that he be placed on probation for such time and on such terms and conditions as it shall fix; the court may direct, as one of such terms and conditions, that payment of the fine may be made to the probation officer . . . and when such fine shall have been fully paid the order of commitment as to the fine shall be void, but the order of commitment as to imprisonment shall not be affected by such payment. . . ."

The sentence imposed was final in so far as the right to appeal was concerned. *Renado* v. *Lummus*, 205 Mass. 155. *Mariano* v. *Judge of District Court of Central Berkshire*, 243 Mass. 90, 92. The execution of the entire sentence in each of the cases cited was suspended and the same is true of the sentences mentioned in *Fay* v. *Harlan, supra*, and *Commonwealth* v. *Sacco, supra*. The execution of the sentence in question was suspended only as to the imprisonment. A fine was imposed and paid. A fine is a pecuniary imposition by way of punishment upon one who has been convicted of crime. That part of the sentence has been executed and been fully satisfied. If the payment of the fine comprised the entire sentence, there would be no doubt as to the admissibility of the record for the purpose of impeaching the defendant. It would be strange if one whose criminal conduct merited only the imposition of a fine could be impeached by the record of his conviction, while one who had incurred a greater penalty, not only by the imposition of a fine but also by a sentence to State prison, is immune from impeachment by a record of his conviction simply because the execution of the sentence of imprisonment was suspended and he was put on probation. A sentence of a fine and a suspended term of imprisonment has two purposes: the imposition of a penalty for the violation of law and the granting of an opportunity to the convict to reform. Each purpose is to a certain extent independent of the other. The suspension of the imprisonment is unaffected by the payment of the fine, and the concept of a fine is not changed by the

fact that imprisonment has been suspended. We think that the imposition of a fine was a final adjudication of guilt. The judge was right in ruling that the record of the defendant's conviction in the previous prosecution could be introduced in evidence in so far as it showed the imposition of a fine. This ruling was at least sufficiently favorable to the defendant.

Assignments 21 to 39, inclusive, are based upon exceptions to the refusal of the judge to give various requests for instructions. The charge was accurate and complete. The defendant has no just complaint that the judge repeatedly directed the jury's attention to the allegations contained in the indictment and warned them that there could be no conviction unless the Commonwealth by the requisite degree of proof established that the defendant had performed the acts of which he was accused. All of these assignments have been examined. They need not be discussed. Instructions sufficient and ample to enable the jury to understand the law applicable to all branches of the case were given to them. It was discretionary with the judge as to what phases of the testimony he would discuss in his charge or whether he would give instructions dealing with some particular part of some issue. The defendant had no right to have a request granted which merely collected a portion of the evidence relating to a part of a branch of the case. The judge was not required to instruct the jury that, the woman having solicited the defendant to treat her to get rid of her pregnancy, her evidence "should be scrutinized with peculiar care." The woman although not an accomplice was a participant. *Szadiwicz* v. *Cantor*, 257 Mass. 518, 519. The judge could have directed the jury's attention to her relationship to the transaction under investigation as bearing upon her credibility or he might say nothing with reference to the matter. He adopted the latter course and in doing so committed no error of law. The defendant had no right to have the jury instructed that unless the defendant caused the miscarriage he should be acquitted. That was not a correct statement of the law.

The defendant was not charged with causing an abortion but he was charged with the performance of certain acts with the intent to procure a miscarriage. The Commonwealth properly contended that the defendant purposely caused the miscarriage, and the occurrence of the miscarriage toward the end of his treatment was persuasive evidence together with the other testimony of his intent in treating the patient. A judge is not required to rule or instruct a jury that the evidence warrants the finding of some fact which is not decisive of any issue. *Burgess* v. *Giovannucci*, 314 Mass. 252, 255. Some of the requests were argumentative in form and the judge was right in not bringing them to the jury's attention. *Russell* v. *Berger*, 314 Mass. 500, 503. So far as the requests contained correct statements of the law, they were sufficiently covered by the charge and the defendant fails to show error in the refusal to give any of them. *Commonwealth* v. *Polian*, 288 Mass. 494, 499. *Gregory* v. *Maine Central Railroad*, 317 Mass. 636, 641–642.

The remaining assignments are based upon the failure to grant a motion for a new trial and the refusal to grant all but three of the requests for rulings on this motion. Nearly all of these requests were directed to the weight of the evidence, or to the claim that there was no evidence of a number of specific facts or that the judge in various ways neglected to charge the jury concerning particular aspects of the case. All of these points could have been raised at the trial. *Commonwealth* v. *White*, 323 Mass. 323. None of them is shown to have any merit when examined with the evidence and the charge. Compare *Sharpe, petitioner*, 322 Mass. 441. There is nothing that takes the case out of the general rule that, in the absence of an abuse of discretion, the denial of a motion for a new trial does not constitute error of law. *Davis* v. *Boston Elevated Railway*, 235 Mass. 482, 496. *Commonwealth* v. *Devereaux*, 257 Mass. 391, 395. *Commonwealth* v. *Venuti*, 315 Mass. 255, 261. *Commonwealth* v. *Rudnick*, 318 Mass. 45, 63.

*Judgment affirmed.*