Commonwealth *v.* Viera.

COMMONWEALTH *vs.* FRANK VIERA.

Bristol.   October 27, 1952. — November 26, 1952.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & WILLIAMS, JJ.

*Abortion.   Evidence,* Dying declaration.   *Words,* "Administers."

A charge in an indictment, based on G. L. (Ter. Ed.) c. 272, § 19, that
the defendant with intent to procure the miscarriage of a woman
"did unlawfully use a certain instrument, to wit, a syringe upon . . .
[her] body" was supported by evidence that with such intent the
defendant put into her womb a syringe merely as a vehicle for intro-
ducing soap and water. [472]

Evidence that the defendant in an indictment gave a woman ergot cap-
sules and told her to take them if certain other treatment which he
had given her with intent to procure her miscarriage "did not work"
was sufficient to support a charge in the indictment, based on G. L.
(Ter. Ed.) c. 272, § 19, that with such intent he "did unlawfully
administer to her a certain drug, to wit, ergot," even though there
was no evidence that she ever took the ergot. [472]

Evidence of expectation of death by a woman when she made a state-
ment the day before her death while desperately ill at a hospital was
sufficient to support the introduction of the statement as a dying
declaration under G. L. (Ter. Ed.) c. 233, § 64, at the trial of an in-
dictment charging acts in violation of c. 272, § 19, resulting in her
death. [472–473]

INDICTMENT, found and returned on November 8, 1951.

The case was heard in the Superior Court by *Smith,* J.

*James S. Seligman,* for the defendant.

*John J. Harrington,* Assistant District Attorney, for the
Commonwealth.

QUA, C.J.   The defendant has been tried and found
guilty by a judge of the Superior Court sitting without
jury upon an indictment the material portion of which
reads: "That Frank Viera on or about the sixteenth day of
September, 1951, with intent to procure the miscarriage of
Elsie Pimental did unlawfully administer to her a certain
drug, to wit, ergot, and did unlawfully use a certain instru-
ment, to wit, a syringe upon the body of said Elsie Pimental

and in consequence thereof said Elsie Pimental died." The case is here after sentence upon the defendant's appeal and assignments of error, with the transcript of the evidence, under G. L. (Ter. Ed.) c. 278, §§ 33A–33G, as amended in § 33E by St. 1939, c. 341.

The indictment is based upon G. L. (Ter. Ed.) c. 272, § 19, which is printed in full in the footnote.[1] It will be observed that this statute sets forth in the alternative a number of related offences (or, as has been said, a number of methods of committing the same offence) differing in greater or less degree. The indictment charges two of these offences (or methods) conjunctively. Nevertheless the defendant could be convicted if the Commonwealth proved only one of the offences (or methods) charged. *Commonwealth* v. *Brown*, 14 Gray, 419, 430–431. *Commonwealth* v. *Martin*, 304 Mass. 320, 322–323. *Commonwealth* v. *Hersey*, 324 Mass. 196, 201. But the Commonwealth must prove at least one of the charges as laid in the indictment. *Commonwealth* v. *Stone*, 300 Mass. 160, 163. It was not necessary to show that either the miscarriage or the death was in fact caused by anything the defendant did. Either use of an instrument or administering ergot with the necessary intent would in itself constitute the crime. The woman need not be pregnant at all. *Commonwealth* v. *Nason*, 252 Mass. 545. *Commonwealth* v. *Hersey*, 324 Mass. 196, 207–208. *Commonwealth* v. *Taylor*, 132 Mass. 261. *Commonwealth* v. *Follansbee*, 155 Mass. 274, 277. *Commonwealth* v. *Surles*, 165 Mass. 59, 61. *Commonwealth* v. *Cheng*, 310 Mass. 293, 299. Death need not be alleged. If it occurs, it is the nature of an aggravation of the offence and affects only the penalty. *Commonwealth* v. *Wood*, 302

---

[1] "Whoever, with intent to procure the miscarriage of a woman, unlawfully administers to her, or advises or prescribes for her, or causes any poison, drug, medicine or other noxious thing to be taken by her or, with the like intent, unlawfully uses any instrument or other means whatever, or, with like intent, aids or assists therein, shall, if she dies in consequence thereof, be punished by imprisonment in the state prison for not less than five nor more than twenty years; and, if she does not die in consequence thereof, by imprisonment in the state prison for not more than seven years and by a fine of not more than two thousand dollars."

Mass. 265, 272. We think there was sufficient evidence to sustain both charges as laid. For convenience we will deal with the second charge first.

There was evidence, admitted without objection, of an admission (perhaps more properly called a confession) by the defendant to the effect that with the intent to procure a miscarriage he had dissolved soap in hot water, put it in a syringe, put the syringe into the womb of Elsie Pimental, and forced the water into her body and that he had done this because he had heard that "this would work." There was evidence that a miscarriage occurred not later than the second day afterwards. The syringe was an "instrument" used "upon the body of . . . Elsie Pimental," even though it was used only as a vehicle for the introduction of soap and water. There was evidence of an intent to procure a miscarriage. This was enough.

The evidence on the first charge of the indictment — that with intent to procure a miscarriage the defendant did unlawfully administer ergot to Elsie Pimental — was that he gave her four ergot capsules and told her to take them if what he had done, that is, the soap and water treatment, "did not work." There was no evidence that she ever took any of the ergot, or that what he had done "did not work." We think no such evidence was required. In our opinion it was enough if he supplied the drug to her with the necessary intent. In a fair sense one who himself supplies a drug to be taken "administers" the drug. No narrow construction should be given to the word "administers." As used in the statute, it is contrasted with "advises" and "prescribes," which are appropriate words for use in instances where the defendant has not himself supplied the drug. The statute was intended to be sufficiently comprehensive to include all methods of procuring an unlawful abortion.

There was no error in admitting a dying declaration of Elsie Pimental implicating the defendant. G. L. (Ter. Ed.) c. 233, § 64. This declaration was made in a hospital on the day before her death. There was ample evidence that she was then desperately ill. She was in an oxygen

tent. Her voice was weak. Her doctor had told her that her condition was poor. The last rites of the church had been administered to her. While she did not expressly say that she had abandoned every last flicker of hope, she did say that she was very sick and did not expect to recover and did expect to die, and that she would make a dying declaration. The evidence of expectation of death may not perhaps have been quite as strong as that held sufficient in *Commonwealth* v. *Hebert,* 264 Mass. 571, 576–577, and *Commonwealth* v. *Polian,* 288 Mass. 494, 497–498, but it was at least as strong as that in *Commonwealth* v. *Hoff,* 315 Mass. 551, 552–553.

What we have said covers all the assignments of error that have not been waived.

*Judgment affirmed.*