COMMONWEALTH *vs.* KARL GOLDENBERG
(and two companion cases against the same defendant).

Bristol. November 3, 1958. — January 15, 1959.

Present: WILKINS, C.J., SPALDING, WILLIAMS, WHITTEMORE, &
CUTTER, JJ.

*Abortion. Rape. Pleading, Criminal,* Bill of particulars. *Evidence,* Credibility of witness. *Practice, Criminal,* Verdict.

There was no error in the denial of motions for further particulars filed by a defendant indicted for rape and adultery where the Commonwealth had filed bills of particulars specifying the physical acts of the defendant. [379]

Upon an indictment under G. L. c. 272, § 19, charging that the defendant, with the intent to procure the miscarriage of a woman, unlawfully administered to her a "certain drug or other noxious thing" and used a "certain instrument" and "a lamp, a belt and steam bath" upon her body, and a bill of particulars stating that the Commonwealth was unable to specify the name of the drug used and did not know the identity of the "other noxious thing" and that the instrument used was "some sort of vibrator," there was no error in the denial of a motion by the defendant for further particulars. [379]

Conviction of a physiotherapist for violation of G. L. c. 272, § 19, was warranted by evidence that a woman called on him at his office for the purpose of procuring an abortion and he told her the price for treatments, that there she took steam baths and the defendant used an

electric vibrator, a sun lamp, and a water belt on her person and gave her injections of a drug, and that he was paid money after such treatments. [382]

Conviction of a physiotherapist for rape under G. L. c. 265, § 22, was not warranted by evidence that a young woman went to the defendant's office accompanied by a man to have a treatment to procure an abortion, that her companion went into a television room off of the office and the defendant locked the door after him, that the woman undressed and underwent the defendant's treatment, including injections of a drug which made her feel "very funny . . . sort of powerless," and that the defendant then told her that he "had to have intercourse" with her as that "would help it some way" and immediately did so, where it appeared that the woman made no objection when advised of the proposed intercourse, that she was sensible of what the defendant was doing but offered no resistance and uttered no cry, that she was not deprived of speech or movement by the drug and arose and dressed without difficulty and told her companion that she felt "fine," and that she told nobody of the incident for several days. [382–383]

Rape under G. L. c. 265, § 22, is not committed where force is not used although consent to intercourse is obtained by fraud. [383–384]

At the trial of indictments for an unlawful attempt to procure a miscarriage and for rape, there was no error in admitting testimony of the victim that she had heard the defendant state to a police officer that he had never seen her before, and that the defendant told her at the time of the alleged crimes that "he had to have intercourse" with another woman for whom he was attempting to procure a miscarriage as "that would help it some way." [384]

At the trial of an indictment, a question to a witness for the defendant on cross-examination as to what she had heard a witness for the Commonwealth say when both were at a police station and whether she then "interjected" any remarks was admissible in the trial judge's discretion to test the truthfulness or accuracy of her testimony. [385]

There was no error at the trial of indictments for an unlawful attempt to procure a miscarriage and for rape in permitting the defendant to be asked on cross-examination whether he had told a police officer that he did not know anyone bearing the name of the victim. [385]

At the trial of an indictment for an attempt to procure a miscarriage in violation of G. L. c. 272, § 19, there was on the record no error in an instruction that it was unnecessary to prove "the names of medicines used or that such is noxious in the sense that it is used in the statute." [386]

A defendant found guilty of crime by a jury has no right to have the jury polled. [386]

THREE INDICTMENTS, found and returned on June 7, 1957. The cases were tried in the Superior Court before *Cahill*, J.

*Melvin S. Louison,* (*Lawrence F. O'Donnell & Leonard Louison* with him,) for the defendant.

*John W. McIntyre,* Assistant District Attorney, for the Commonwealth.

WILLIAMS, J.   The defendant has been found guilty by a jury on three indictments numbered 9148, 9149, and 9150, in which he is charged respectively with an unlawful attempt to procure the miscarriage of one Roberta L. Lane, with the rape of said Roberta L. Lane, and with the commission of adultery with her.   He has been sentenced on the first two indictments, and the third for adultery has been placed on file.   The indictments were tried together and the defendant's exceptions, to which we hereinafter refer, are presented in a consolidated bill of exceptions.

In response to motions by the defendant the Commonwealth filed bills of particulars, G. L. c. 277, § 40, in which it stated that the offences which were the subjects of the indictments were committed at the office of the defendant in Taunton on the evenings of February 27 and 28, 1957.   As to allegations in indictment 9148 it stated that it was unable to specify the name of the drug used; that it did not know the identity of the "other noxious thing"; and that the instrument used was "[s]ome sort of vibrator."   In respect to the other indictments 9149 and 9150 it specified the physical acts of the defendant.   Exceptions to the denial of motions for further particulars should be overruled.   Those furnished were adequate to inform the defendant of the charges against him and to enable him to prepare his defence.   *Commonwealth* v. *Lammi,* 310 Mass. 159, 161–162.   "Some sort of vibrator" was a sufficient description of the instrument to which indictment 9148 referred.   *Commonwealth* v. *Thompson,* 159 Mass. 56.   See *Commonwealth* v. *Martin,* 125 Mass. 394.   The name of the drug was not required, nor a statement that the grand jury did not know its name.   *Commonwealth* v. *Morrison,* 16 Gray, 224.   *Commonwealth* v. *Sinclair,* 195 Mass. 100, 107.

There was evidence at the trial that the defendant was a physiotherapist with an office in his house at Taunton where he lived with his wife.   At the time of the alleged offences, Roberta L. Lane, the woman named in the indictments, was

nineteen years of age and unmarried.  She was three months pregnant and on the evening of February 27, 1957, accompanied by her mother with whom she lived and a friend of her mother, one Edward Schell, called on the defendant at his office in Taunton for the purpose of procuring an abortion.  Schell had learned of the defendant from another physiotherapist in Boston.  Roberta informed the defendant of her condition and he told her that the price would be $125 for three treatments.  He said that these treatments would work nine times out of ten but, if they did not, he knew someone in East Providence to whom he would refer her.  She undressed in a bedroom adjoining his office and then took a steam bath for about twenty minutes.  After the bath the defendant applied a vibrator to her private parts.  It was rubber, had a handle on it, and was electrically operated.  He said that "it should work" and that she "would reach a climax."  She reached a climax as a result of its application.  The defendant next used a water belt around her stomach and back.  She felt a mild shock such as "you would get with an electric cord."  While she was on the table he used a sun lamp on her back.  Then he gave her two injections with a needle in her buttocks.  It " 'stammered' her speech" and she felt "very funny."  She was able to walk but it was not like her normal walk.  After the treatment which took about an hour she returned to her home in Mattapan.

She came again to the defendant's office on the following evening.  Only Schell accompanied her as her mother was working.  She saw there two women who were about to leave, one elderly and one younger.  Schell went into a television room off of the office and the defendant locked the door after him.  Roberta repeated the steam bath and the defendant again used the vibrator and the water belt.  He gave her two injections as before.  He then told her that he was treating the woman who had just left for the same thing and that "he had to have intercourse" with her, that it "would help it some way."  She testified that she did not tell the doctor not to do it to her when he said he had to

have intercourse with her for the same reason as with the prior woman. He then pulled her down to the end of the table on which she was lying unclothed with a towel over her and had intercourse with her. "He said that he would not reach a climax and that is all she can remember he said. . . . [S]he knew it was not right and . . . knows that he did reach a climax. . . . When she realized he was pulling her towards him . . . she felt differently than she normally would. She did not do anything; she could not do anything. Her voice was stammered and she felt very dizzy and very, very funny. . . . [S]he could move but she could not. . . . [S]he could not explain it . . . she was sort of powerless in a way because it was something she had never experienced before. She did not think she was able to control her limbs at that time. If she had wanted to do something, she did not believe that she could have." The incident "took probably five minutes." After it was over she got off the table and dressed herself. After she came out of the bedroom the defendant asked Schell for money and was paid $125. Roberta was able to talk but had thickness of speech. When Schell asked her how she felt, she said "Fine." She said nothing to Schell of what had occurred. She told of it to a friend some days after and later to her mother. It was then reported to the State police. Roberta did not return for a third treatment but Schell went to Taunton on March 1 and the defendant refunded $25. Schell asked him what kind of drug he had given Roberta and he gave Schell a box top and said that was the drug. The defendant asked Schell for Roberta's address and telephone number "so that he could apologize" but Schell would not give them to him. Roberta was examined by Dr. Richard Ford on March 7. He found "five small red punctate or point like marks on her buttocks." Only two were definitely consistent with being needle puncture marks. Dr. Ford testified that "there is no substance that can be injected into the buttocks, or anywhere else, of a chemical nature that will produce an abortion unless the substance is such a deadly poison that it would make the mother desperately ill. . . . [I]f puncture

marks lasted for eight days, then something of an irritating or viscous nature must have been injected."

At the conclusion of the evidence the judge denied motions for directed verdicts of not guilty subject to the defendant's exceptions.

The indictment 9148 for attempt to procure a miscarriage was returned under G. L. c. 272, § 19, which so far as material to this case provides, "Whoever, with intent to procure the miscarriage of a woman, unlawfully administers to her, or advises or prescribes for her, or causes any poison, drug, medicine or other noxious thing to be taken by her or, with the like intent, unlawfully uses any instrument or other means whatever . . . shall . . . be punished . . . ." The indictment substantially followed the form authorized by G. L. c. 277, § 79, and charged that the defendant on or about February 28, 1957, with the intent to procure the miscarriage of Roberta L. Lane, unlawfully administered to her a "certain drug or other noxious thing," and used a "certain instrument," and "a lamp, a belt and steam bath" on her body.

There was no error in the denial of the motion for a directed verdict. It could be found that the defendant treated the woman substantially in the manner to which she testified and that his treatments were intended to procure her miscarriage. The statute is sufficiently comprehensive to include all methods of procuring an unlawful abortion. *Commonwealth* v. *Viera,* 329 Mass. 470. Whether the methods employed were likely to accomplish the intended result is immaterial. There was evidence from the physical effect upon the woman that the injections were of some drug. The vibrator could be classified as an instrument. "Other means" were used in the form of steam baths and by the application of a water belt and sun lamp. The Commonwealth was required to prove only one of the methods prohibited by the statute. *Commonwealth* v. *Viera, supra.*

In respect to indictment 9149 we think that the evidence was insufficient to prove that rape was committed. The common law crime of rape is set forth in G. L. c. 265, § 22,

which provides that "Whoever ravishes and carnally knows a female by force and against her will shall be punished by imprisonment in the state prison for life or for any term of years." "[A]gainst her will" means "without her consent" a phrase apt to describe the attitude of a woman who in fact is unconscious. *Commonwealth* v. *Burke,* 105 Mass. 376. *Commonwealth* v. *Roosnell,* 143 Mass. 32. According to the testimony of Roberta she made no objection when advised of the proposed treatment. She was sensible of what the defendant was doing and offered no resistance. She uttered no cry although she knew that Schell was in an adjoining room. The action of the drug was not such as to deprive her of speech or movement. Its effect appears to have been the same as that experienced by her on the previous evening. She had no difficulty in arising from the table and dressing herself. In response to inquiry by Schell she said that she felt "Fine." She told nobody of the occurrence for several days. *Glover* v. *Callahan,* 299 Mass. 55, 57. The evidence at most was equivocal and it could not be found beyond a reasonable doubt that the intercourse was without her consent.

The evidence, moreover, negatived the use of force. There was "no act of violence, no struggle, no outcry, and no attempt to restrain or confine the person . . . which constitute the usual . . . and essential evidence" of rape. *Commonwealth* v. *Merrill,* 14 Gray, 415, 417. This is not a case where a woman is incapable of consent by reason of stupefaction, unconsciousness or helplessness, and the amount of force required to commit the crime may be only that sufficient to effect the intercourse. *Commonwealth* v. *Burke,* 105 Mass. 376. *Commonwealth* v. *Roosnell,* 143 Mass. 32, 40.

Whether rape is committed where consent of the woman is obtained by fraud has not been decided in this Commonwealth. In *Commonwealth* v. *Roosnell, supra,* it was said by way of dictum that "sometimes even where the consent of one capable of consenting is procured by fraud" there may be a conviction of rape. And in *Commonwealth* v. *Stratton,*

114 Mass. 303, 305, where cantharides concealed in figs were administered to a girl it was held that there was an assault and battery, the means used being "a fraud upon her will, equivalent to force in overpowering it." The effect of fraud was carefully considered in *Don Moran* v. *People,* 25 Mich. 356, and, on facts strikingly similar to those in the present case, a conviction of rape was reversed on the ground that the element of force was lacking. We agree substantially with the reasoning of the Michigan court. The essence of the crime is not the fact of intercourse but the injury and outrage to the feelings of the woman by the forceful penetration of her person. It is a crime radically different from assault and battery although the latter offence is incidental to it. *Commonwealth* v. *McCan,* 277 Mass. 199, 203. Fraud cannot be allowed to supply the place of the force which the statute makes mandatory. See *Mills* v. *United States,* 164 U. S. 644, 648. The exception to the denial of the motion for the direction of a verdict of not guilty in 9149 should be sustained.

There is no occasion for discussing the denial of a similar motion in the indictment for adultery 9150. Plainly there was no error.

We turn to the exceptions of the defendant to rulings on evidence in the course of the trial, to an argument of the district attorney, and to a portion of the judge's charge. Roberta was properly allowed to testify to a conversation which she overheard between the defendant and Lieutenant Sullivan of the State police in the police station on March 13. She said that Sullivan asked the defendant "if he had ever seen me before; and Mr. Goldenberg said, no, he hadn't."

There was no error in refusing to strike out Roberta's testimony that on February 28 the defendant told her "he had to have intercourse" with the woman who had just left and "that would help it some way."

It is not necessary to discuss the exclusion of questions to Dr. Ford on cross-examination as it is apparent there was no error.

The wife of the defendant, who had testified for the defence that Roberta had been treated for a cold and a back complaint on February 27 and 28, that she paid $5 for each treatment, and that Schell did not return on March 1, was asked on cross-examination what she heard Roberta say when she, the witness, was at the police station with her husband, and whether she "interjected" any remarks. The judge allowed the questions, ruling that they were not admitted "for any purpose of proving facts but to test the truthfulness" of the testimony which the witness had given. Mrs. Goldenberg answered that she heard Roberta say that she visited the Goldenberg home on February 27 and 28, that Schell returned alone on March 1, and that he received back $25. The witness testified that she "interjected the matter of the telephone call" which Roberta's mother was alleged to have made to her on March 3 but nothing more, and that no questions were asked of her. In the circumstances her failure to dispute the accuracy of what Roberta said could have been found to be an admission by her that what Roberta then said was true and bore upon the accuracy of her own testimony as to the same matters at the trial. The admission of the question was within the judge's discretion. See *Foster* v. *Worthing*, 146 Mass. 607, 608; *Hayden* v. *Stone*, 112 Mass. 346, 352; *Perry* v. *Breed*, 117 Mass. 155, 165–166; *Brigham* v. *Fayerweather*, 140 Mass. 411, 416.

There was no error in permitting the defendant when on the witness stand to be asked on cross-examination whether he did not tell the State detective that he did not know anyone named Roberta Lane. His answer was that he "was not sure if the girl's name was used."

An exception to the refusal of the judge to stop the argument of the district attorney to which the defendant objected on the ground that he was misstating facts cannot be sustained. There is nothing in the record to show a misstatement and the judge cautioned the jury that arguments of counsel were not to be regarded as evidence.

In his charge the judge instructed the jury that the word "noxious" means "hurtful, harmful, injurious, destructive, unwholesome; and if a thing used has any of those characteristics, then it is contrary to the law as set out in § 19." There was no error in the further instruction that "it is not necessary to prove the names of medicines used or that such is noxious in the sense that it is used in the statute". *Commonwealth* v. *Morrison*, 16 Gray, 224.

After the court had adjourned and a sealed verdict was ordered returned, the jury returned for further instructions in connection with the rape charge. The defendant and his attorney had left the courthouse and the judge gave further instructions in their absence. As these instructions to which exceptions were later saved involved only the indictment for rape, it is unnecessary to consider them.

After the verdicts were read the defendant moved to poll the jury. This motion was denied and an exception was saved. There is no merit in the exception. The point raised was decided adversely to the defendant's contention in *Commonwealth* v. *Costley*, 118 Mass. 1, 28.

There was no error in the subsequent denial of the motion for a new trial. *Commonwealth* v. *Gricus*, 317 Mass. 403, 405. It was supported by an affidavit as to the instructions given in the absence of the defendant but otherwise raised no point of law which had not been considered in connection with the trial.

*Exceptions in 9148 overruled.*
*Exceptions in 9150 overruled.*
*In 9149 exceptions sustained, verdict set aside, and judgment ordered for the defendant.*