COMMONWEALTH *vs.* CHARLES R. CARSON.

Hampden.    April 5, 1965. — June 25, 1965.

Present: WILKINS, C.J., WHITTEMORE, KIRK, SPIEGEL, & REARDON, JJ.

*Larceny.    Practice, Criminal,* Exceptions: whether error harmful; Inconsistent charges. *Value. Error,* Whether error harmful. *Evidence,* Relevancy and materiality.

At the trial of an indictment for larceny of a promissory note of the value of more than $100 issued by a corporation, any error in refusing to allow the defendant to inquire as to the value of the note on cross-examination of its owner was harmless where the judge later instructed the jury that the owner would have testified that the note was "worthless" and he did testify that the corporation "couldn't have paid" the note [433]; and testimony by the president of the corporation warranted the jury in finding that the value of the note was more than $100 [434].

Upon appeal from a conviction upon an indictment for larceny of a promissory note of the value of more than $100 issued by a corporation, a contention by the defendant that the Commonwealth had failed to prove that the note was a valid and authorized obligation of the corporation was without merit where the defendant had offered no evidence to rebut the presumption of regularity of the note. [433]

Error prejudicial to a defendant convicted upon an indictment for lar-
ceny of capital stock and upon an indictment for larceny of money
proceeds from the sale of stock appeared where the jury were instructed
to consider each indictment separately and the charge, by inclusion of
a statement that they could find the defendant "guilty of stealing the
stock and also guilty of stealing the money proceeds from the sale of
the stock," permitted the erroneous conclusion that he could be con-
victed of stealing both stock and the proceeds from the sale of the same
stock and so permitted two convictions for a single crime; the error was
not cured by the imposition of concurrent sentences.   [434–436]

A belief by a defendant indicted for larceny of property of another in
the defendant's possession, that a debt was owed him by the owner of
the property, would justify the defendant withholding therefrom only
the amount claimed by him.   [437]

At the trial of an indictment for larceny, whether a witness saw the de-
fendant "turn over" to any person the property allegedly stolen was
not material.   [437]

INDICTMENTS found and returned in the Superior Court
on May 6, 1963.

The cases were tried before *Macaulay, J.*

*Efrem A. Gordon* for the defendant.

*Warren K. Kaplan,* Assistant Attorney General, for the
Commonwealth.

REARDON, J.   These are appeals under G. L. c. 278,
§§ 33A–33G, following the conviction of the defendant on
three indictments respectively charging him with larceny
of capital stock, larceny of a promissory note, and larceny
of money proceeds from the sale of stock, all being the
property of one Charles L. Furcolo, and all of the value of
more than $100.   For the purposes of this opinion a lengthy
review of the evidence is unnecessary, and we set out the
facts only in summary form.

In 1960 Dr. Charles L. Furcolo of Springfield joined
with Bernard Francis, an attorney, and Harris Osman,
both of Connecticut, in the purchase of a race track in Han-
cock, Massachusetts, known as Hancock Raceway, Inc.
(the corporation).   Thereafter Furcolo asked the defend-
ant Charles R. Carson, his tax consultant, to hold nominal
title to Furcolo's stock (fifty class A voting shares and fifty
class B nonvoting shares), as well as a promissory note for
$25,000 issued by the corporation, as Furcolo did not wish

his involvement to be known publicly. The evidence as to what was promised Carson for his services by Furcolo is conflicting. Furcolo testified that he promised Carson only his expenses, a directorship, and $5,000 a year "if the track warrants it." There was evidence that Furcolo promised Carson five shares of nonvoting stock and $5,000 a year as comptroller. Carson testified that Furcolo initially promised him ten shares of each class of stock in addition to other perquisites and that Furcolo later, in appreciation of Carson's efforts, increased Carson's interest to twenty-five shares of each.

The corporation's activities in 1960 were marked by stress occasioned both by its need for money and by increasing disagreement among the principal parties interested in its affairs. In September, one Dario Bacciochi of Providence, Rhode Island agreed to obtain financing in exchange for a substantial stock interest and legal title to all class A stock by way of a voting trust. Hostility between Furcolo and Carson appears to have begun when Carson, with other participants in the corporation, decided to do business with Bacciochi, although Furcolo "went along" with this decision.

Further hostilities followed, and on February 15, 1961, Furcolo, through an attorney, demanded that Carson return the stock and the note. Carson's attorney replied on behalf of Carson, denying that Furcolo had any right to the stock or note. During the summer of 1961 Carson, with legal counsel, negotiated to sell his "interest" in the stock, all of which stood in his name. A buyer was ultimately found. On December 5, 1961, a closing was held in New York City and Carson sold to one Rizzo for $150,000 his "interest" in the fifty shares of class A voting stock and the fifty shares of class B nonvoting stock, the former represented by voting trust certificates. A dispute took place involving the note, which Rizzo claimed was to be included in the sale. One of Carson's attorneys, Henry A. Moran, Jr., testified that en route to New York Carson told him that the note belonged to Furcolo and that at the clos-

ing Carson was "vehement" with respect to the note, pro-
testing that it was not part of the sale. What took place
at this stage of the closing is unclear. Carson testified
that his other attorney, James A. Reed, advised him to
turn over the note and assured him that Furcolo had been
"taken care of." Mr. Reed's testimony is directly oppo-
site. He testified that he had "a very casual knowledge of
that note," that he was in no way engaged to negotiate its
sale, and at no time did he assure Carson that Furcolo had
been paid in full. The dispute between Carson and Rizzo
was finally resolved by Carson's agreement not to negotiate
the note and "not to make any demand for payment of any
principal or interest of said note."

1. We are principally concerned with the indictment
charging the defendant with stealing a promissory note
worth more than $100. The defendant argues that the
judge's refusal to allow inquiry as to the value of the note,
on cross-examination of Furcolo, was erroneous and that
this error was not cured by the judge's reversal of his rul-
ing in his charge since the reversal did not enable the de-
fendant to obtain Furcolo's opinion as to whether the note
was worthless. This argument overlooks the fact that, in
correcting his ruling, the judge told the jury to consider
"that Dr. Furcolo would answer the question asked that
the stock [note?] [1] was worthless at the time he was talking
about." This instruction fully protected the defendant.
Moreover, while Furcolo did not testify to the worth of the
note, he did respond in the affirmative to the question,
"They [the corporation] couldn't have paid your note if
they wanted to?"

The defendant argues that the Commonwealth has failed
to prove that the note was a valid and authorized obliga-
tion of the corporation. The short answer to this argu-
ment is that the defendant offered no evidence to show that
the note was unauthorized. Regularity of internal corpo-
rate proceedings in such a case is presumed. *Stauffer* v.

---

[1] A reading of the judge's charge makes it clear that he intended to use the
word "note," and he later so informed the jury.

*Koch,* 225 Mass. 525, 530–531.   *Federal Natl. Bank* v. *Shool-
man,* 276 Mass. 191, 192–193.   Fletcher, Private Corpora-
tions (1954 ed.) § 486, p. 508.   See *Moroni* v. *Brawders,*
317 Mass. 48, 52–53, and cases cited.

We think the question of value was properly submitted
to the jury, who were told that to constitute larceny the
property taken must be of some value and that if the value
was in excess of $100 the offence would be a felony.   G. L.
c. 266, § 30.   The jury could have found from the testimony
of Mr. Francis, president of the corporation, that the note
was worth more than $100.   Mr. Francis testified to the
solvency of the corporation and stated that Furcolo "put
in $25,000 into the corporation when we first started . . .
and this was evidence of his payment . . .."   Also perti-
nent to this question is the testimony of Mr. Francis that
he received (and later sold to Rizzo) a note of the corpora-
tion for $23,000 at the same time the note alleged to have
been stolen was issued.

2.   The defendant has argued at some length that the
convictions on the two other indictments should be reversed
or set aside.   The jury were instructed by the judge to con-
sider each indictment separately.   They were told that it
was "perfectly possible . . . for you to find that the De-
fendant was not guilty of stealing the stock and guilty of
stealing the money — or not guilty of stealing the money
and guilty of stealing the stock — *or guilty of stealing the
stock and also guilty of stealing the money proceeds from
the sale of the stock*" (emphasis supplied).   The judge
further informed the jury that if they found the defendant
guilty of stealing the stock and also the money, "the dis-
position of those cases will be a matter for the Court . . .
to decide. . . .   [T]he Court will have in mind the dif-
ficulties arising from a situation where a jury might con-
sider that they might be convicting a Defendant twice for
larceny of the *same property* . . ." (emphasis supplied).
The defendant complains that this instruction permitted
him to be found guilty, under the "proceeds" indictment,
of essentially the same offence charged in the "stock" in-

dictment. The Commonwealth appears to agree that one cannot be found guilty both of stealing shares of stock and of stealing the proceeds from the sale of those shares but urges that the jury could have found the defendant guilty of stealing fifty shares (fifty class A, fifty class B, or twenty-five of each) and of stealing at a later time the proceeds from the other fifty shares.

We agree that it would have been possible for the jury, in view of the conflicting evidence, to find the defendant guilty according to the theories advanced by the Commonwealth. The judge's instructions, however, could have led the jury to believe that the defendant could be convicted of stealing both shares of stock and the proceeds from the same shares. We cannot say whether the jury did so interpret the charge. "It is not sufficient that an instruction be so drawn that a jury may reach the right conclusion, but it is required that it be so framed that a jury may not draw the wrong conclusion therefrom." *Miller* v. *United States,* 120 F. 2d 968, 972 (10th Cir.).

If the jury found the defendant embezzled some or all of the shares (including the trust certificates representing the class A stock), as they must have found, we think a finding of guilty on the "proceeds" indictment, since it may have related to some or all of the shares within the "stock" indictment, is inconsistent and results in two convictions for a single crime. It is well settled that "a prosecution for embezzlement may follow money embezzled through a dozen reinvestments, so long as it is in the embezzler's hands." Wharton's Criminal Law (12th ed. 1932) § 1265. See *Commonwealth* v. *Tuckerman,* 10 Gray, 173, 196. But we know of no cases holding that a defendant may be twice convicted in such circumstances, and where the question has arisen this result has been rejected. See *People* v. *Epstein,* 245 N. Y. 234, 243; *Giannetto* v. *General Exch. Ins. Corp.* 10 App. Div. 2d (N. Y.) 442, 446–447. See also *People* v. *Hughes,* 79 Cal. App. 697.

The jury should have been instructed that, as to any given share of stock, they could find the defendant guilty

of stealing either the share or the proceeds from its sale. The imposition of concurrent sentences by the judge does not cure the erroneous charge.

In the leading case of *Commonwealth* v. *Haskins,* 128 Mass. 60, the defendant appealed from convictions of larceny of a cow and of receiving the same cow knowing it to have been stolen. The court held that the attempt of the Commonwealth to enter a nolle prosequi on one of the counts after the convictions was of no avail and that "although, as a legal effect of a conviction upon each count it cannot be said strictly that it is an acquittal upon the other, yet the finding of guilty upon both is inconsistent in law, and is conclusive of a mistrial." *Id.* at 61. See *The Queen* v. *Evans,* 7 Cox C. C. 151, 157. In *Milanovich* v. *United States,* 365 U. S. 551, reversing in part 275 F. 2d 716 (4th Cir.), the Supreme Court of the United States considered the disposition of a case involving convictions of larceny and receiving. While the sentencing in the *Milanovich* case raised questions not now before us, the decision states, significantly, that "there is no way of knowing whether a properly instructed jury would have found . . . [the defendant] guilty of larceny or of receiving (or, conceivably, of neither)." 365 U. S. at 555. We conclude, therefore, that the judgments on the indictments for larceny of stock and larceny of money proceeds from the sale of stock must be reversed.

3. There is no merit in the defendant's contentions that the judge erred in refusing to grant certain requests for instructions.[2] The jury were informed, in substance, as

---

2 2. "If the jury find that, regardless of who actually owned the property the defendant reasonably believed he owned what he was selling, the defendant must be found not guilty."

4. "The Commonwealth has the burden of proof that the defendant did not act under an honest claim of right."

6. "If Carson believed he owned an interest in the shares of stock and believed he was selling only his own interest, regardless of the legal effect of the contract, he does not have the requisite intent to commit larceny."

3. "If the defendant withheld the note or stock or trust certificate from Furcolo as security for a debt claimed by him in good faith to be due from Furcolo, or as security for an interest in such property claimed by him in good faith, then he does not have the intent to defraud essential to the crime charged, and must be found not guilty."

requested in Nos. 2, 4 and 6.   The judge stated that "theft by embezzlement must be an intentional and fraudulent appropriation" and that for conviction "it must be beyond a reasonable doubt that the Defendant had a criminal intent to defraud."   The jury were instructed also (request No. 3) that " [i]f . . . the Defendant honestly thought that he had a legal right to sell the stock and make uncollectible the note, then . . . you should find . . . [him] not guilty." With respect to the defendant's claim that a debt was owed him by Dr. Furcolo, the jury were correctly told that such a belief would justify withholding only the amount claimed. See Wharton's Criminal Law and Procedure (12th ed. 1957) §§ 520, 542.

4.   As to the exclusion of evidence, assignments of error Nos. 17, 21, 22, 23, 24, 25, 26 and 27 require no discussion.   In each instance the judge's ruling may be sustained on the grounds that the evidence offered was irrelevant, hearsay, or self-serving, or that the judge's determination was an appropriate exercise of discretion.   Finally, whether Mr. Moran "saw . . . Charles Carson . . . turn over" the note to any person was properly excluded.   The judge said, "A person can steal a thing and retain it for himself without turning it over to somebody else."   This was a correct statement of the law applicable to the present facts.   See *Commonwealth* v. *Este,* 140 Mass. 279, 284. Moreover, even if relevant, whether Mr. Moran saw such an act take place would not be material.

5.   It follows that as to indictment 13,355 the judgment is affirmed, and that as to indictments 13,354 and 13,356 the judgments are reversed.

*So ordered.*