COMMONWEALTH *vs.* JOSEPH A. BARRY.

Suffolk. February 3, 1986. — June 12, 1986.

Present: WILKINS, LIACOS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Robbery. Felony-Murder Rule. Practice, Criminal,* Required finding, Challenge to jurors, Capital case, Instructions to jury, Verdict.

At the trial of a defendant charged with armed robbery on a joint venture theory, the evidence, including evidence that the defendant, knowing his accomplices to be armed, drove them to the scene of the robbery and waited there for them, was sufficient to permit the jury to draw the inference that the defendant knew he was assisting in the perpetration of an armed robbery. [720-723]

At the trial of indictments charging first degree murder and armed robbery, the judge did not err in departing from the procedure prescribed by Rule 6 of the Superior Court (1974) by requiring the defendant to exercise his peremptory challenges before the full number of jurors was obtained, inasmuch as the exception to the rule provided "for a crime punishable by death" was applicable in a first degree murder case even though at the time of the trial the death penalty could not have been imposed on the defendant. [723-726]

On appeal from convictions of armed robbery on a theory of joint venture in a case in which the defendant was found not guilty of first degree murder with respect to a fatal shooting of one of the robbery victims by the defendant's accomplice, this court held that there was no error in the judge's refusal to instruct the jury that, if they found the defendant not guilty of murder, they must acquit him on the indictments for armed robbery. [726-727]

INDICTMENTS found and returned in the Superior Court Department on July 7, 1981.

The cases were tried before *James J. Nixon,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Stephen Hrones* for the defendant.

*David B. Mark,* Assistant District Attorney, for the Commonwealth.

LIACOS, J. Joseph A. Barry was tried on an indictment charging him with murder in the first degree and on three indictments charging him with armed robbery.[1] The jury returned verdicts of not guilty on the murder indictment and guilty on the indictments for armed robbery. Barry appealed his convictions, and we transferred the case to this court. As grounds for his appeal, Barry claims that (1) the trial judge erred in denying the defendant's motion for a required finding of not guilty; (2) the judge erred in that he violated Rule 6 of the Superior Court (1974) by requiring the defendant to exercise his peremptory challenges before all the jurors had been declared indifferent; (3) the judge erred in refusing to instruct the jury that, if they found the defendant not guilty on the charge of murder, they must acquit him on the indictments for armed robbery. We hold that there was no error.

A. *Required finding of not guilty*. Barry claims that the judge should have allowed his motion for a required finding of not guilty, made at the close of the Commonwealth's case. He argues that the Commonwealth failed to introduce evidence from which a rational trier of fact could find, beyond a reasonable doubt, all the elements of the crime of armed robbery. See *Commonwealth* v. *Latimore,* 378 Mass. 671, 677 (1979).

In our review of the denial of a defendant's motion for a required finding of not guilty, we follow the requirement of the Supreme Court of the United States as stated in *Jackson* v. *Virginia,* 443 U.S. 307 (1979), and quoted in *Commonwealth* v. *Latimore, supra* at 677-678: " '[The] question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt' (emphasis in original). *Jackson* v. *Virginia,* 443 U.S. 307, 318-319 (1979) (five to three decision). Thus, to sustain the denial of a directed verdict, it is not enough for the appellate court to find that there was some record evidence, however

---

[1] We affirmed the denial of the defendant's motion to dismiss these indictments in *Barry* v. *Commonwealth,* 390 Mass. 285 (1983). See Mass. R. Crim. P. 36 (b), 378 Mass. 909 (1979).

slight, to support each essential element of the offense; it must find that there was enough evidence that could have satisfied a rational trier of fact of each such element beyond a reasonable doubt."

Barry contends that the Commonwealth did not produce sufficient evidence that he knowingly encouraged or assisted others in the commission of the crime and thus shared the requisite criminal intent.[2] See *Commonwealth* v. *Brown,* 392 Mass. 632, 638-639 (1984); *Commonwealth* v. *Watson,* 388 Mass. 536, 544 n.7 (1983). We have reviewed the record in this case, and we summarize the evidence.

Edward J. White testified as follows. In the spring of 1981, one Carlos Mesa talked with Martin McCauley and White about robbing the Casa Romero restaurant on Gloucester Street in Boston. They made several dry runs. The night of June 26-June 27, 1981, McCauley and White met the defendant, Joseph Barry, at the Mission Hill housing project. Barry, McCauley, and White went to a Jamaica Plain apartment shared by McCauley and White. White retrieved two guns from underneath the kitchen stove, wiped them with a cloth to remove fingerprints, and put them in a bag. At some time, Mesa joined the trio. Mesa decided he did not want to take part in the robbery. The four men drove in McCauley's automobile to the Forest Hills MBTA station to drop off Mesa. From Forest Hills, McCauley, White, and Barry drove back to the Mission Hill project because McCauley's automobile was not running properly.

They decided to use Barry's van to travel to the restaurant. The van was parked in a parking lot near the Mission Hill project. When they arrived at the parking lot, McCauley and White each took a pair of gloves from the trunk of McCauley's automobile. The three men then got into Barry's van. By that

---

[2] A codefendant, Martin McCauley, was tried separately and convicted of murder in the first degree, two counts of armed robbery, and of unlawfully carrying a firearm. Those convictions were affirmed in *Commonwealth* v. *McCauley,* 391 Mass. 697 (1984). The third defendant, Edward J. White, had been convicted of murder in the second degree and testified in this case as a witness for the prosecution.

time, White had taken one of the guns out of the bag and put it in his waistband under his coat; McCauley had the other gun. Barry drove the van to the Back Bay area following the directions of McCauley and White.

Casa Romero was at one end of an alley running between Gloucester and Hereford Streets. White and McCauley directed Barry to the Hereford Street end of the alley. Barry asked the pair what they wanted him to do; they told him, "Just sit there and wait." White and McCauley left the van, walked down the alley to the restaurant and, after waiting for the last patrons to leave, entered the restaurant. White held two employees at gunpoint and took their money, while McCauley took the restaurant receipts from a third employee. The pair herded the three employees out of the restaurant.

White's testimony continued:

> THE PROSECUTOR: "And when you got out into that alleyway, what did you do?"
> THE WITNESS: "I was just standing there wanting to leave. I wanted to leave. We was [*sic*] standing there too long."
> THE PROSECUTOR: "What did Marty McCauley do?"
> THE WITNESS: "Shot a guy in between the eyes."
> THE PROSECUTOR: "Who was the guy he shot?"
> THE WITNESS: "Carlos Madariaga."
>
> . . .
>
> THE PROSECUTOR: "After Marty McCauley shot Carlos Madariaga betwen the eyes, what did you do?"
> THE WITNESS: "I threw up all over my sneakers."
> THE PROSECUTOR: "Then what did you do?"
> THE WITNESS: "I ran."
>
> . . .
>
> THE PROSECUTOR: "At some point, did you run to Joe Barry's van?"
> THE WITNESS: "Yes, I did."

When they tried to start the van, it crashed into a parked automobile. White and McCauley both fled on foot. White saw Barry the next day.

> THE PROSECUTOR: "What did he tell you happened?"
> THE WITNESS: "He told us that we killed someone."

Another witness, David Horne, a student at the Massachusetts Institute of Technology living at 32 Hereford Street, Boston, testified about Barry's activities on Hereford Street in the early morning hours of June 27, 1981. Horne saw Barry in a van double-parked on Hereford Street. Horne observed the van over a period of about forty-five minutes. He observed Barry sitting behind the wheel and walking up and down the sidewalk while the van's motor was running. About thirty minutes after first noticing the van, Horne saw that it had been moved across the mouth of the alley. Fifteen to twenty minutes later, Horne went to bed, and in a few minutes, about 2 A.M., he heard a crash. He investigated and found that the van had struck an automobile parked on the side of Hereford Street.

Barry says that the evidence cannot support a finding, beyond a reasonable doubt, that he knowingly assisted in the commission of the armed robberies. He relies on the testimony of Edward White that "Joe Barry was giving us a ride. He didn't know what he was doing." White made similar statements at other points in his testimony.

There is no question that the evidence demonstrates that Barry assisted White and McCauley. Therefore the element to be proved is that Barry "knowingly" assisted. "When, as here, knowledge is an essential element of an offence, it may be, and generally is, proved by circumstantial evidence; and it may be inferred from a great variety of circumstances." *Commonwealth* v. *Altenhaus,* 317 Mass. 270, 273 (1944). *Liparota* v. *United States,* 471 U.S. 418, 428-430 (1985).[3] See *Commonwealth* v. *Rojas,* 388 Mass. 626, 629-630 (1983); *Commonwealth* v. *Watson,* 388 Mass. 536, 547 (1983). The circumstantial evidence presented in this case was sufficient to permit a rational trier of fact to draw the inference that Barry

[3] "It is not always easy to prove at a later date the state of a man's mind at that particular earlier moment when he was engaged in conduct causing or threatening harm to the interests of others. . . . So of course his thoughts must be gathered from his words (if any) and actions in the light of all the surrounding circumstances. Naturally, what he does and what foreseeably results from his deeds have a bearing on what he may have had in his mind." W. LaFave & A.W. Scott, Jr., Criminal Law § 28, at 203 (1972).

knew that he was assisting in the perpetration of an armed robbery. The trial judge found that the evidence could have satisfied a rational trier of fact of the element of knowledge beyond a reasonable doubt.[4] We agree. The judge did not err in denying the defendant's motion for a required finding of not guilty.

B. *Procedure for peremptory challenges.* Barry requested that the procedure for challenging prospective jurors be conducted pursuant to Rule 6 of the Superior Court (1974).[5] Under that procedure, challenges for cause would be acted on until a full jury had been found to stand indifferent. Only then would the parties use their peremptory challenges. See K.B. Smith, Criminal Practice and Procedure § 1720 (2d ed. 1983). The trial judge did not grant Barry's request, but instead required the Commonwealth and the defendant to exercise their rights of peremptory challenge as to each juror one-by-one as the jurors were found individually to be indifferent. See K.B.

---

[4] There was also evidence that, when the police officers arrived at the scene of the accident, the defendant lied to the police about his activities and the identity of his companions who had fled. Such evidence of consciousness of guilt was also evidence which the jury could consider as to the defendant's state of mind. *Commonwealth* v. *Rojas, supra* at 630 n.1.

[5] "The procedure in the matter of peremptory challenges of jurors, except in an indictment for a crime punishable by death, shall be as follows, unless specially otherwise ordered in a particular case. The jurors shall first be called until the full number is obtained. If any examination on oath of the jurors is required, it shall be made, and any challenge for cause shall be acted on, and if any jurors shall be excused others shall be called to take their places. When it has been determined that all the jurors stand indifferent in the case, each plaintiff shall at one time exercise his right of peremptory challenge as to such jurors, and after others have been called to take the places of those challenged, and it has been determined that they stand indifferent in the case, shall at one time exercise his right of challenge of such others, and so on until he has exhausted his right of peremptory challenge or has ceased to challenge. Each defendant shall then exercise his right in the same manner. Each plaintiff, if his right of peremptory challenge has not been exhausted, shall then again exercise his right in the same manner, but only as to jurors whom he has not already had opportunity to challenge; and the parties shall likewise exercise the right in turn, until the right of peremptory challenge shall be exhausted or the parties shall cease to challenge. No other challenging, except for cause shown, shall be allowed."

Smith, *supra* at § 1721. Barry claims that the judge's denial of his request conflicts with the holding of *Commonwealth* v. *Barrows,* 391 Mass. 781, 784 (1984), and requires reversal. See *Commonwealth* v. *Brown,* 395 Mass. 604, 606, 607 (1985) (judge's failure to follow procedures set forth in rule 6 constituted reversible error without showing of prejudice to defendant).

The sole issue on the appeal in *Commonwealth* v. *Barrows, supra,* was the propriety of the trial judge's refusal to follow the procedure of rule 6. We held that "[r]ule 6 is unambiguous in its direction and it allows an exception only in a trial of an indictment for a capital crime or in [a] case in which a judge 'specially otherwise ordered.' Neither exception is present here. The language of rule 6 is obligatory and, therefore, must be followed." *Id.* The Commonwealth argues that the rule was followed in this case because this was "a trial of an indictment for a capital crime."

The language of the rule itself provides an exception "for a crime punishable by death." The defendant was indicted and tried on a charge of murder in the first degree. At the time of the crime (June 27, 1981) the statute providing for punishment for the crime of murder allowed imposition of the death penalty. G. L. c. 265, § 2, as amended through St. 1979, c. 488, § 2. However, in October, 1980, we had declared c. 488 unconstitutional under art. 26 of the Declaration of Rights of the Constitution of Massachusetts. *District Attorney for the Suffolk Dist.* v. *Watson,* 381 Mass. 648, 671 (1980). Though the Legislature replaced the statute struck down with another allowing the punishment of death, St. 1982, c. 554, § 3,[6] the replacement statute was applicable only to those offenses committed on or after January 1, 1983. Consequently, the defendant was not tried on "an indictment for a crime punishable by death."

We do not construe strictly the "death-penalty" limitation in rules providing special procedures in cases where once a

---

[6] We subsequently declared unconstitutional that portion of St. 1982, c. 554, providing for the death penalty. *Commonwealth* v. *Colon-Cruz,* 393 Mass. 150, 171-172 (1984).

death penalty might have been imposed. In *Commonwealth* v. *Flaherty,* 384 Mass. 802 (1981), for instance, we examined G. L. c. 276, § 58, as amended through St. 1978, c. 478, § 286. The statute provided that there should be a preference for release on personal recognizance in setting bail for prisoners arrested for an offense "other than an offense punishable by death." We said there that "the legislative judgment [was] that the benefits of the bail reform act should not be extended to a person charged with murder in the first degree. The decision of this court in *District Attorney for the Suffolk Dist.* v. *Watson,* 381 Mass. 648 (1980), holding the death penalty to be unconstitutional, does not warrant the conclusion that G. L. c. 276, § 58, should now be construed to give a statutory preference for personal recognizance where the charge is murder in the first degree." *Commonwealth* v. *Flaherty, supra* at 802-803. See *Abrams* v. *Commonwealth,* 391 Mass. 1019 (1984).

We have construed similarly the language of G. L. c. 263, § 6, as amended through St. 1973, c. 591, § 20, permitting waiver of trial by jury "in any criminal case other than a capital case," holding that absence of a death penalty did not eliminate the statutory exception. *Commonwealth* v. *Marshall,* 373 Mass. 65, 67 (1977). *Commonwealth* v. *O'Brien,* 371 Mass. 605, 606-607 (1976). In *Commonwealth* v. *O'Brien, supra,* we noted that the underlying legislative concern with procedural safeguards in these most serious of criminal cases justified the exception to the statutory right to waive a jury trial. Another safeguard provided to defendants being tried for crimes punishable by death was the increased number of peremptory challenges. See G. L. c. 234, § 29, as amended through St. 1972, c. 285. Cf. Mass. R. Crim. P. 20 (c), 378 Mass. 889 (1979) (granting a greater number of peremptory challenges where the indictment is "for a crime punishable by imprisonment for life."[7]) Because of the many more peremptory challenges in a capital case, seating the jury will be a lengthier process. To

---

[7] We note also that G. L. c. 278, § 33E (1984 ed.), defines a capital case as "a case in which the defendant was tried on an indictment for murder in the first degree and was convicted of murder in the first degree."

help streamline the process, the juror-by-juror method of challenge may be adopted. See Superior Court Rules, 1954, Annotated 191 (E. Dangel ed. 1954).[8]

We hold that the exception in rule 6 for trials on indictments for crimes punishable by death applies to trials for murder in the first degree. Therefore, the trial judge was not obligated to conform to the procedure mandated by rule 6. His refusal to do so was not error.

C. *Jury instructions*. Barry asked the judge to instruct the jury that, if they acquitted Barry on the murder indictment, they also must acquit on the indictments for armed robbery. The judge refused to give the requested instruction. The jury returned a split verdict — not guilty of murder, but guilty of armed robbery. Barry claims that the judge's refusal was error resulting in an inconsistent and illogical verdict.

The defendant says that "[t]here was no question but that the murder occurred during the commission of the armed robbery." The jury necessarily found that Barry shared the requisite intent to assist in the commission of the armed robbery. Because "[t]he effect of the felony-murder rule is to substitute the intent to commit the underlying felony for the malice aforethought required for murder," *Commonwealth* v. *Matchett,* 386 Mass. 492, 502 (1982), Barry says the jury logically cannot have found that he possessed the intent for armed robbery without finding him guilty of murder.

Though our decision in *Commonwealth* v. *Scott,* 355 Mass. 471, 475 (1969), clearly restates the rule that "mere inconsistency in verdicts, one of which is an acquittal, will not render the verdict of guilty erroneous even though such inconsistency may have indicated the possibility of compromise on the part of the jury," the defendant suggests that we should distinguish his case, due to his request for an "all or nothing" instruction. In *Commonwealth* v. *Dickerson,* 372 Mass. 783, 797-798 n.6 (1977), we said that in a murder trial in which the prosecution

---

[8] Rule 48 of the Superior Court (1954) is the predecessor of Rule 6 of the Superior Court (1974). See Superior Court Rules, 1974, Annotated 47 (Mass. B. Ass'n. ed. 1975).

proceeds on a theory of felony-murder, the judge must charge as to the factors the jury must determine, including "whether that homicide was in the course of an armed robbery." The trial judge here charged on the relevant factors in accordance with *Commonwealth* v. *Dickerson, supra.* The defendant's requested charge would have taken from the jury the factual finding whether the homicide occurred in the course of the robbery, and the judge would have committed error by giving that charge. Indeed, the defendant's argument that he was entitled to an "all or nothing" charge is foreclosed by our decision in *Commonwealth* v. *Corcione,* 364 Mass. 611, 616-617 (1974).

Further, the jury's findings were not necessarily inconsistent. The jury were free to find that the homicide occurred after the conclusion of the armed robbery. Cf. *Commonwealth* v. *Watson,* 388 Mass. 536, 544 (1983). Thus the defendant's intent to participate in the robbery may not have been transferable to the homicide. The judge correctly instructed the jury that such a finding was permissible. The testimony of Edward White, *supra,* may be construed as showing a completed robbery before the shooting occurred. There was no error in the judge's refusal to give the requested instruction.

*Judgments affirmed.*