COMMONWEALTH vs. JAMES KEEVAN.

Middlesex. February 2, 1987. — August 10, 1987.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Robbery. Joint Enterprise. Evidence,* Hearsay. *Rape. Practice, Criminal,* Instructions to jury, Objections to jury instructions, Verdict. *Constitutional Law,* Confrontation of witnesses.

Where, at the trial of indictments for rape, kidnapping, and unarmed robbery, there was strong evidence of a joint venture between the defendant and another person which encompassed all of the acts allegedly committed, no substantial risk of a miscarriage of justice was created by the admission, without objection, of the victim's testimony that, before the other person took her money, he had told her that the defendant wanted him to take it. [561-562]

At the trial of an indictment for rape, defense counsel's general objection to the judge's charge to the jury saved no appellate rights with respect to his failure to give a requested instruction that "[o]btaining sexual intercourse through fraud and deceit is not rape." [563-564]

A majority of the court concluded that, at the trial of an indictment for rape, no substantial risk of a miscarriage of justice was created by the judge's failure to give the jury a requested instruction that "[o]btaining sexual intercourse through fraud and deceit is not rape," where the jury were correctly instructed on the elements of rape; where defense counsel had argued to them that consensual sexual intercourse is not rape, even if consent is obtained by fraud; and where, by also convicting the defendant of kidnapping the victim, the jury implicitly found that she did not consent even to being at the place where the rape allegedly occurred. [564-565] ABRAMS, J., concurring.

At a criminal trial the judge did not err in denying the defendant's motion that the prosecution be required to elect which of the alleged acts of sexual intercourse it relied upon to prove the offense of rape. [565-566]

Where the record of a criminal trial reflected that the jury had acted unanimously in returning a guilty verdict on a charge of rape, no substantial risk of a miscarriage of justice was created by the judge's failure to give a "general unanimity" instruction, informing them that their verdict must be unanimous. [566-567]

Where, at a rape trial, the prosecution's evidence was sufficient to defeat a motion for a required finding of not guilty, no substantial risk of a

miscarriage of justice was created by the judge's failure to give a "specific unanimity" instruction, requiring that the jury agree unanimously as to the particular act of sexual intercourse on which they based a verdict of guilty. [567]

At the trial of indictments for rape, kidnapping, and unarmed robbery, a police detective's testimony, on cross-examination, that the defendant's alleged coventurer "confessed" did not infringe the defendant's right, secured by the Sixth Amendment to the United States Constitution, to confront the witnesses against him, in view of the circumstances that the challenged testimony did not directly name or implicate the defendant, that there was no testimony identifying the defendant as a participant in anything to which the other individual "confessed," and that the judge's curative instructions were prompt and forceful. [567-571]

INDICTMENTS found and returned in the Superior Court Department on October 26, 1984.

The cases were tried before *Thomas R. Morse, Jr., J.*

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Jane Larmon White,* Committee for Public Counsel Services, for the defendant.

*J.W. Carney, Jr.,* Assistant District Attorney, for the Commonwealth.

LIACOS, J. The defendant was convicted of aggravated rape, kidnapping, and unarmed robbery.[1] On March 8, 1985, he was sentenced to three concurrent terms of from five to ten years at the Massachusetts Correctional Institution at Walpole (now Cedar Junction). In this appeal, he argues that there was insufficient evidence to support the robbery conviction absent certain hearsay evidence; that he was denied his constitutional right to confront a witness against him; and that the judge erred in denying his motion to require the Commonwealth to elect which alleged act of sexual intercourse was the rape charged in the indictment. He also claims error because the judge neglected to instruct the jury that their verdicts were required to be unanimous. Further, as to the alleged rape, he argues that the judge erred in his instructions to the jury. We affirm the convictions.

---

[1] A codefendant, Charles L. Cobb, was charged with the same crimes, but his trial was severed on motion of the defendant.

We summarize the evidence. The victim was twenty-three years old at the time of trial in March, 1985. She testified to the following facts. She was working as a prostitute in Boston's "Combat Zone" when, at 2 A.M. on September 3, 1984, she encountered the defendant and Charles L. Cobb. She agreed to charge each man $25 for oral sex. She entered their automobile voluntarily and directed the defendant to drive to a parking lot near the Boston waterfront. There, she received her fee from the defendant and performed fellatio on him. Cobb, however, could not produce any money.

Sighting a police cruiser, the defendant drove to a second location in front of the Children's Museum. There, the two men searched the trunk of the automobile unsuccessfully for money. They then entered the automobile. Cobb put his hand over the victim's mouth and, with the defendant's help, forced her to the back seat. The defendant said that he would shoot her in the face if she made noise. The victims saw no gun at this time. The defendant drove the automobile while Cobb forced the victim to lie face down in the back seat. Cobb demanded that the victim perform fellatio on him; she complied.

They drove for about two hours, ultimately arriving at a boat dock. The defendant went to a boat, lit its lights, and returned to the automobile, armed with what appeared to be a gun. The defendant and Cobb forced the victim onto the boat. While Cobb waited on deck, the defendant took the victim into the cabin and "told" her to have sex with him. She refused but then engaged in "regular" sexual intercourse with the defendant.

The two men returned the victim to the automobile. Again, the defendant drove, this time to a wooded area. Cobb led the victim from the automobile, saying that the defendant wanted him to take her into the woods so that the defendant, who would follow, could photograph them engaged in sexual acts. The victim never saw the defendant or a camera, but Cobb said that the defendant wanted a picture of them engaged in anal intercourse. She refused. Cobb then asked whether she would prefer to die, and she said, "I'd rather die." Cobb said they would pretend to have anal sex. They did so.

Subsequently, Cobb told the victim that the defendant wanted him to take her money. Because she was afraid, the victim gave Cobb the $95 she had. When Cobb told her she would be left in the woods, she protested and followed him back to the automobile. She was again forced to lie face down in the back seat with Cobb, but this time she was driven to Cambridge and released.

Detective Michael Giacoppo, a member of the Cambridge police sexual assault unit, used the registration number given to him by the victim to trace the automobile to the defendant's employer in Portsmouth, New Hampshire. By telephone, Detective Giacoppo asked the defendant to come to Cambridge for an interview; without asking why, the defendant agreed to come. The detective then obtained an arrest warrant and so advised police officials of Dover, New Hampshire, where the defendant lived. An officer of the Dover police department was detailed to watch the defendant's home. When the defendant saw the officer's cruiser, he fled into a nearby wooded area. Police reinforcements were called, and the defendant was arrested at gunpoint.

The defendant made a statement in which he admitted that, on the night in question, he and Cobb had engaged a Combat Zone prostitute to perform oral sex. But he claimed that she voluntarily rode in the automobile because "she wanted to . . . have further sex with them" at no charge. He admitted that he had sexual intercourse with the woman on a boat, but he did not admit to forcing himself on her. He claimed that, after leaving the boat, he drove Cobb and the woman to a house in Lexington; Cobb and the woman went inside; when the two emerged, the woman was upset; and, before she parted company with the two men, she had voluntarily returned the $50 which he claimed he had paid her.

The defendant testified in his own behalf.[2] Amplifying on the statement he had given to police officers, the defendant said it was at the victim's suggestion that he first began driving while she performed consensual sexual acts with Cobb, and,

---

[2] Cobb did not testify at the defendant's trial.

once on board the boat, she had voluntarily undertaken to perform fellatio on him. Further, she had consented to vaginal intercourse; and he had neither carried a weapon nor told her that he had one. He explained his flight from the Dover police officers as an attempt to avoid officers whom he did not know until he could communicate with officers he did know.

1. *Unarmed robbery*. The defendant argues that, in the absence of a hearsay statement which should not have been admitted, there was insufficient evidence as matter of law to link him to the commission of this crime. He asks that a finding of not guilty be entered.

The evidence tying the defendant to the robbery of the victim was her testimony that, before Cobb took her money, he told her that the defendant wanted him to take it.[3] The Commonwealth sought to prove that Keevan was a joint venturer with Cobb in all the crimes charged, including the robbery of the victim. Thus, it was the Commonwealth's burden to demonstrate that the defendant "intentionally assisted the principal [Cobb] in the commission of the [robbery] and that he did this, sharing with the principal the mental state required for that crime." *Commonwealth* v. *Richards*, 363 Mass. 299, 307-308 (1973). For the robbery charge to have been properly submitted to the jury, there must have been suffcient evidence of each of these elements to permit a rational trier of fact, when viewing the evidence in the light most favorable to the Commonwealth, to find each element beyond a reasonable doubt. *Commonwealth* v. *Barry*, 397 Mass. 718, 719 (1986), and cases cited.

The victim testified that, when she and Cobb and Keevan were together, Keevan "gave the orders." Keevan was nor far

---

[3] According to the victim, the robbery occurred after Cobb had walked the victim a distance three or four minutes away from the defendant's automobile, and after Cobb had forced her to have intercourse:

| THE PROSECUTOR: | "After [Cobb forced you to have intercourse], what next occurred?" |
| THE WITNESS: | "I put my pants back on. Then he told me that Keevan also wanted him to take my money, so I gave him my money." |

away at the time of the robbery, and his propinquity was relevant for it may inferably have "embolden[ed Cobb] to do the deed, by giving him hopes of immediate assistance," *Commonwealth* v. *Soares,* 377 Mass. 461, 472, cert. denied, 444 U.S. 881 (1979), quoting *Commonwealth* v. *Knapp,* 9 Pick 495, 518 (1830). Additionally, there was evidence of flight and other acts from which the jury might have inferred Keevan's consciousness of guilt. The statement of Cobb as to Keevan's intent (see note 3, *supra*) was, however, a significant part of the Commonwealth's case on the robbery indictment.

The Commonwealth does not dispute the characterization of Cobb's statement as hearsay. It points out, however, that no objection was lodged.[4] "The defendant cannot now require that it be disregarded. Hearsay, once admitted, may be weighed with the other evidence, and given any evidentiary value which it may possess." *Mahoney* v. *Harley Private Hosp., Inc.,* 279 Mass. 96, 100 (1932). See *Abraham* v. *Woburn,* 383 Mass. 724, 726 n.1 (1981); P.J. Liacos, Massachusetts Evidence 74 (5th ed. 1981 & Supp. 1985). This being a criminal appeal, however, we review to inquire whether, due to the jury's consideration of objectionable hearsay, "there is a substantial risk of a miscarriage of justice." *Commonwealth* v. *Freeman,* 352 Mass. 556, 564 (1967). We think there is not. As stated, the evidence of a joint venture between Cobb and Keevan for all the acts in question is strong. Additionally, the statement of Cobb was probably admissible under the so-called coconspirator's exception to the hearsay rule. See *Commonwealth* v. *Borans,* 379 Mass. 117, 145-148 (1979), and authorities cited. There was no risk of a miscarriage of justice.

---

[4] After the victim testified on direct examination, see note 3, *supra,* defense counsel neither objected to the question nor moved to strike the answer. *Commonwealth* v. *Borans,* 379 Mass. 117, 145 n.26 (1979). When arguing the defendant's motion for a required finding of not guilty, counsel made no mention of the hearsay declaration.

The defendant's appellate counsel seeks to raise, in her reply brief, the claim of ineffective assistance of trial counsel because of his failure to object. This argument is not timely; as it cannot be raised for the first time in the reply brief. *Leigh* v. *Board of Registration in Nursing,* 395 Mass. 670, 684 n.14 (1985).

2. *Aggravated rape.* The defendant testified that the victim consented to sexual intercourse in reliance on Cobb's fraudulent representations that the two men would relocate her and employ her in prostitution without requiring a share of her earnings. Consequently, the defendant asked the judge to instruct the jury that "[o]btaining sexual intercourse through fraud and deceit is not rape." The judge declined.

The Commonwealth concedes that the requested instruction is correct as a general proposition of law, *Commonwealth* v. *Goldenberg,* 338 Mass. 377, 384 (1959); but see *Commonwealth* v. *Helfant,* 398 Mass. 214, 221 n.5 (1986) (questioning the vitality of *Goldenberg, supra*). The Commonwealth does not dispute that the defendant was entitled to the instuction; it argues instead that the instructions, as given, effectively conveyed the substance of the instruction sought. The judge instructed the jury that, to constitute rape, intercourse must be accomplished against the victim's will and by force or threat of bodily harm.

We consider first whether the defendant adequately preserved his rights for appellate review. The judge stated at a conference, prior to instructing the jury, that he would not give the defendant's requested instruction concerning consent obtained by fraud because the prosecution had not "asked or suggested consent obtained by fraud." Despite the irrelevance of the judge's comment, the defendant did not explain why the instruction was sought. Rule 24(b) of the Massachusetts Rules of Criminal Procedure, 378 Mass. 895 (1979), explicitly states that a party must specify "the matter to which he objects and the grounds of his objection." See *Commonwealth* v. *McDuffee,* 379 Mass. 353 (1979). The purpose of this requirement in rule 24 (b) is to bring alleged errors or omissions to the attention of the judge at a time when they still can be corrected, and thereby avoid the necessity of a new trial to correct an error which could have been eliminated before the jury began their deliberations. See generally *Henderson* v. *Kibbe,* 431 U.S. 145, 154 (1977); 2 C.A. Wright, Federal Practice and Procedure § 484, at 698 (2d ed. 1982) (analogous Federal rule).

On appeal, defense counsel states that his purpose in requesting such an instruction "should have been obvious to the judge." The record reveals, however, that his purpose was not obvious to the judge. "It is a fundamental rule of practice that where a party alleges error in a charge he must bring the alleged error to the attention of the judge in specific terms in order to give the judge an opportunity to rectify the error, if any." *McDuffee, supra* at 357. "Defense counsel could have pursued the point, but he chose not to. . . . He was not entitled to secrete an error for use on appeal in case the verdict went against him." (Citation omitted.) *Commonwealth* v. *Cheek,* 374 Mass. 613, 615 (1978). After the charge, defense counsel objected generally to the instructions in their entirety. We have said that this "catchall statement" saves no rights. *Commonwealth* v. *McColl,* 375 Mass. 316, 320 (1978). Moreover, though counsel then objected to some specific portions of the charge, he did not object to the charge as it defined rape. Further, although he identified some requested instructions omitted by the judge, he did not call the judge's attention to his failure to instruct, as requested, on fraud and deceit. In these circumstances, counsel's silence at this stage is conclusive; appellate rights were not preserved. *Commonwealth* v. *Burno,* 396 Mass. 622, 627-628 (1986).

Consequently, we review only to determine whether such error as there may have been "was of a type and seriousness which should lead us to reverse in the absence of a proper exception. The test is whether there is a substantial risk of a miscarriage of justice." *Commonwealth* v. *Freeman, supra* at 563-564. In the circumstances of this case, where the jury were correctly instructed on the statutory elements of rape, where they heard argument from defense counsel that consensual intercourse is not rape, even if consent is obtained by fraud, and where the jury, by convicting the defendant of kidnapping, impliedly found that the victim did not consent even to her presence at the scene of the alleged rape, there is little doubt the jury found that intercourse was forced upon the victim, against her will and without consent, fraudulently ob-

tained or otherwise. Thus there was no substantial risk of a miscarriage of justice.[5]

The defendant also maintains that the judge erred in denying his motion that the Commonwealth be required to elect which act of intercourse it was relying on to prove the offense of rape. There was no error. "Where a crime can be committed in any one of several ways, an indictment properly charges its commission in all those ways . . . . Then the defendant should be convicted if it is proved that he committed the crime in any of those ways." *Commonwealth* v. *Dowe,* 315 Mass. 217, 219-220 (1943). Accord *Commonwealth* v. *Sullivan,* 354 Mass. 598, 615 (1968), cert. denied, 393 U.S. 1056 (1969) (degrees of murder).

---

[5] Thus, even if we were to assume error in the refusal of the judge to give the requested instruction, the conviction should stand because the record discloses no substantial risk of a miscarriage of justice. The author of this opinion, joined by Justices Lynch and O'Connor, disagrees that there was no substantial risk of a miscarriage of justice. The reasons are as follows. The court has stated that "[r]ape is the carnal knowledge of any woman above the age of consent against her will . . . : its essence is the felonious and violent penetration of the person of the female by the defendant." *Commonwealth* v. *McCan,* 277 Mass. 199, 203 (1931). "Under the indictment charging rape, the prosecution has an affirmative duty to prove beyond a reasonable doubt that sexual intercourse was performed against the will of the victim and without consent." *Commonwealth* v. *Chretien,* 383 Mass. 123, 135 (1981). The judge in the case at bar omitted all reference to consent. The jury, as instructed, might reasonably have speculated, contrary to law, that the defendant still would be guilty of rape even if they found that the victim's "will" had been overborne by her reliance on Cobb's fraudulent representations. Thus, the instructions were not "'so framed that [the] jury [could] not draw the wrong conclusion therefrom.' *Miller* v. *United States,* 120 F.2d 968, 972 (10th Cir. [1941])." *Commonwealth* v. *Carson,* 349 Mass. 430, 435 (1965). Because the issue was raised fairly by the testimony of both the defendant and the victim, and lack of consent is a fact the prosecution must prove, and because submitting a case to a jury without informing the jurors of the claimed defense is prejudicial, it follows, in the author's view, that reversal is required. To view the fraud instruction as dispensible is to suggest by analogy, that so long as a charge does not misstate the statutory elements of a crime, no instruction need be given on relevant aspects of any affirmative defense. Surely, this is not the law of this Commonwealth. See, e.g., *Connolly* v. *Commonwealth,* 377 Mass. 527, 529-531 (1979) (where murder is charged, if self-defense is in issue, instructions are required), and cases cited.

At the time the judge denied the defendant's motion to require an election, the judge suggested that the appropriate solution would be for him to instruct the jurors that they must be unanimous on the act of intercourse which constitutes rape.[6] The defendant rejected the judge's suggestion and insisted that the Commonwealth must elect the act on which it was relying. The judge correctly concluded that a unanimity instruction would be the proper method to resolve this issue.

On appeal, the defendant now asserts that, because his motion to require an election was denied and because the judge did not instruct the jury on the requirement of unanimity, the conviction of aggravated rape must be reversed. The judge's ruling denying the motion was correct; thus there is no merit to that contention. As to the failure of the judge to instruct on the need for unanimity, the defendant rejected the judge's suggested instruction on this issue. Moreover, experienced defense counsel did not request a unanimity instruction and did not object to its omission after the judge concluded the jury instructions. See Mass. R. Crim. P. 24(b). Therefore, the inquiry of this court is limited to determining whether this omission presents a substantial risk of a miscarriage of justice. *Commonwealth* v. *Freeman,* 352 Mass. 556, 564 (1967).

In cases in which the indictment alleges an offense, but the evidence shows multiple acts of allegedly criminal conduct, we have addressed the effect of giving only a general unanimity instruction and omitting a specific unanimity instruction. See *Commonwealth* v. *Comtois,* 399 Mass. 668, 675-677 (1987). See also *Commonwealth* v. *Lemar,* 22 Mass. App. Ct. 170 (1986). A general unanimity instruction informs the jury that the verdict must be unanimous, whereas a specific unanimity

---

[6] The judge suggested to the defendant's attorney that the jury could "be instructed that if it's natural [sexual intercourse] all twelve jurors have to agree, or if it's unnatural [sexual intercourse] all twelve jurors have to agree." The defendant on appeal argues that this proposal was insufficient because there were two alleged instances of "natural" rape. It is obvious, however, that, had the defendant requested the judge to clarify that point, these instructions would have been sufficient, and the judge would have granted them.

instruction indicates to the jury that they must be unanimous as to which specific act constitutes the offense charged.

With regard to the omission of a general unanimity instruction, the record reflects general unanimity on the conviction of aggravated rape. The transcript reveals that, when the jury returned the verdicts, the jurors affirmed the verdicts.[7] The transcript also reveals that the jury had questions concerning the armed robbery and kidnapping instructions. The record does not reflect any questions or difficulty with the aggravated rape instructions. In these circumstances, the lack of a general unanimity instruction did not create any substantial risk of a miscarriage of justice.

In considering the omission of a specific unanimity instruction, we have determined that there is no substantial risk of a miscarriage of justice if the evidence satisfies each element of the statute and is sufficient to defeat a motion for a required finding of not guilty. *Commonwealth* v. *Comtois, supra* at 676-677.[8] Here the Commonwealth introduced sufficient evidence to satisfy each element of G. L. c. 265, § 22 (*a*) (1984 ed.). Thus, under our standard, the instructions do not create a substantial risk of a miscarriage of justice.

3. *Cobb's "confession."* Detective Giacoppo was permitted to testify to the substance of what the victim told him on September 6, 1984. On cross-examination, defense counsel sought to impeach this testimony by asking, "In fact, you don't have any mention of this interview with [the victim] on September 6th in your police report, do you, officer?" The detective replied, "My police report ends on September 5th at Mr. Cobb's confession." Defense counsel immediately requested a mistrial but never moved to strike the statement and never sought cura-

---

[7] In addition, at the outset of the judge's charge, he emphasized that the decision must be arrived at by "group discussion," and that the jurors "should work together as a group sorting out the facts that you find."

[8] The court in *Lemar, supra* at 173, also noted that, in some instances, the defense may prefer the omission of a specific unanimity instruction because the jury may have believed that unanimity as to all the incidents was necessary to support a verdict of guilty and not merely unanimity as to one incident, "thereby somewhat improving the chances of an acquittal."

tive instructions. The judge denied the motion for mistrial. However, he immediately instructed the jury, sua sponte, that the detective's reference to what Cobb may have said, "whatever it was, confession or otherwise, is not evidence against this defendant," and that they were to "disregard this" because "[i]t has nothing to do with the issues you have to decide in this case." Upon conclusion of the detective's testimony, the defendant renewed his motion for a mistrial.

Relying on *Bruton* v. *United States,* 391 U.S. 123 (1968), the defendant argues that reversal of all the convictions is compelled because his constitutional rights to confront the witnesses against him[9] were violated by the testimonial revelation of the fact that Cobb had "confessed."[10] We disagree.

We are persuaded that *Bruton* is not implicated by the circumstances of this case. *Bruton* teaches that, where a nontestifying codefendant's confession inculpates another defendant,

---

[9] The Sixth Amendment to the Constitution of the United States provides in relevant part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." This Federal stricture is binding on the Commonwealth. *Pointer* v. *Texas,* 380 U.S. 400, 406 (1965). The defendant also claims protection under art. 12 of the Massachusetts Declaration of Rights, which likewise guarantees a defendant the right "to meet the witnesses against him face to face." However, the defendant does not maintain that the protections afforded by art. 12 are more extensive than those provided by the Sixth Amendment, or that our analysis should differ depending on the constitutional source of the protection claimed. Thus, we deem the point of State law to have been waived. See Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 919 (1975). Our decision turns solely on considerations of Federal constitutional law.

[10] The defendant also argues that, because Detective Giacoppo was the Commonwealth's chief investigating officer, with permission as such to sit at the prosecution table during trial, his acts on the witness stand are attributable to the Commonwealth. Because the defendant finds it incredible that an officer of Giacoppo's experience could have testified to the fact of Cobb's confession in ignorance of its inadmissibility, or that his failure to guard his tongue was merely negligent, the defendant characterizes this as a case in which the prosecution intentionally misused an inadmissible confession. The defendant offers no authority for the proposition that a detective's actions in response to cross-examination are attributable, without more, to the prosecution. Nor has the defendant attempted to demonstrate that prosecutorial misconduct required a mistrial, or that such misconduct not requiring mistrial on its own account is in any way determinative of, or even relevant to, the disposition of a claimed *Bruton* violation.

an instruction like the one delivered here is ineffective to cure the "powerfully incriminating" and "devastating" prejudice to the inculpated defendant, which results from the likelihood that the jury will be unable to follow such an instruction. *Bruton* v. *United States, supra* at 135-136. "*Bruton,* however, has no application unless the hearsay utterances of a defendant [like Cobb] inculpate a codefendant [like Keevan]. *United States* v. *DiGregorio,* [605 F.2d 1184, 1190 (1st Cir.), cert. denied, 444 U.S. 937 (1979)]; see also *United States* v. *Guillette,* 547 F.2d 743, 755 (2d Cir. 1976), cert. denied, 434 U.S. 839 . . . (1977). Since [Cobb's] extrajudicial statements in no way identified [the defendant] as associated with the [crimes charged], *Bruton* is inapposite to the facts of the instant case." *United States* v. *Albert,* 773 F.2d 386, 388 (1st Cir. 1985).

The defendant argues, however, that an inculpatory connection "may be supplied by *the content of the statement taken in connection with other evidence in the case*" (emphasis in original). *Commonwealth* v. *LeBlanc,* 364 Mass. 1, 8 (1973). He observes that, at trial, he did not dispute his presence during the actions which the Commonwealth calls a joint venture with Cobb to kidnap, rob, and rape the victim; instead, he based his defense on his own testimony that the victim consented to her travels and sexual encounters with Cobb and himself and his denial of the facts of kidnapping and of robbery. Viewed in the light cast by all the evidence, the defendant argues, the revelation of the bare fact that "Cobb confessed" carried with it an implicit declaration by Cobb that he, too, was guilty. From the defendant's perspective, the likelihood that the jury would draw a broadly inculpatory inference was enhanced by the detective's implication that Cobb's confession was damning enough to obviate the need to write down what the victim had to say about Keevan.

While we have recognized that "a statement which does not plainly refer to a codefendant may nevertheless be inculpatory if the codefendant could easily be connected with the statement," *Commonwealth* v. *Cifizzari,* 397 Mass. 560, 573 (1986), referring to *LeBlanc, supra,* consideration of the other

evidence in a case is not constitutionally required. See *Richardson* v. *Marsh,* 481 U.S. 200 (1987), decided subsequent to the argument of this case. In *Richardson,* the Court held that a codefendant's confession which neither names nor implicates the defendant does not invoke the principles enunciated in *Bruton.* Against this backdrop, we read *LeBlanc* and *Cifizzari* to mean only that (1) where the challenged statement does not directly inculpate the defendant, other evidence may be relevant to determine if the risk of contextual implication is pressing enough to invalidate the effect of limiting instructions; but (2) absent any direct inculpation, an appropriate instruction is sufficient to obviate *Bruton* concerns. *LeBlanc, supra* at 9 (where risk of contextual inculpation was substantial, "it might have been better for the judge to give instructions warning against speculations by the jury"). *Cifizzari, supra* at 573-574 (where risk of contextual inculpation was less than strong, curative instructions were not required in the absence of any request by the defendant).

In the circumstances of this case, the risks of contextual inculpation cited by the defendant are counterbalanced by the complete lack of reference to Keevan as a participant of any kind in anything "confessed" by Cobb. In the circumstances of this case, speculation would be required before harm could befall a defendant. Consequently, we do not think that the logic of *Bruton* requires reversal.[11]

In any event, if there was a *Bruton*-type error, it was harmless beyond a reasonable doubt because we do not believe it possible that the challenged statement "influenced the jury adversely to [the defendant]." *Chapman* v. *California,* 386 U.S. 18, 23-24 (1967). See *Commonwealth* v. *Marini,* 375 Mass. 510, 520-521 (1978). "[T]he jury would not have found the Commonwealth's case significantly less persuasive if [Cobb's confession] had been handled with more circumspection." *LeBlanc, supra* at 9-10. The defendant's defenses were more devastated

---

[11] Where the challenged statement neither refers to the defendant nor specifies any acts "confessed," contextual considerations could not "inevitably compel[ ] an inculpating inference," *English* v. *United States,* 620 F.2d 150, 153 n.7 (7th Cir.), cert. denied, 449 U.S. 859 (1980).

by the abundant evidence, including that which permitted inference of his own consciousness of guilt, than by two words uttered in passing and descriptive of Cobb's consciousness of guilt. The trial judge was in the best position to evaluate the prejudicial impact of the indirectly inculpatory statement, *Cifizzari, supra* at 574, citing *Commonwealth* v. *Bourgeois,* 391 Mass. 869, 882 (1984), and he was not required to declare a mistrial. See *Commonwealth* v. *Chubbuck,* 384 Mass. 746, 753 (1981). His curative charge was immediate and forceful. There is no basis to conclude that the jury did not abide by it. The judge did not abuse his discretion in denying the motion for mistrial.

*Judgments affirmed.*


ABRAMS, J. (concurring). I again raise the question whether *Commonwealth* v. *Goldenberg,* 338 Mass. 377 (1959), is still good law. See *Commonwealth* v. *Helfant,* 398 Mass. 214, 221 n.5 (1986). Recent scholarship on the crime of rape creates serious doubt as to the validity of the *Goldenberg* rule. See generally S. Estrich, Real Rape (1987); S. Brownmiller, Against Our Will: Men, Women and Rape (1975).